**UNITED STATES of America, Appellee,**

v.

**Edward Tyrone FARLEY, Appellant.**

**Nos. 92–3127, 94–3174.**

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 24, 1995.

Decided Dec. 22, 1995.

Jonathan S. Zucker, Washington, DC, appointed by the court, argued the cause for the appellant.

S. Hollis Fleischer, Assistant United States Attorney, Washington, DC, argued the cause for the appellee. Eric H. Holder, Jr., United States Attorney, and John R. Fisher, Elizabeth Trosman and Margaret A. Flaherty, Assistant United States Attorneys, Washington, DC, were on the brief.

Before: BUCKLEY, SENTELLE and HENDERSON, Circuit Judges.

Opinion for the court filed by Circuit Judge KAREN LeCRAFT HENDERSON.

KAREN LeCRAFT HENDERSON, Circuit Judge:

Appellant Edward Farley and two of his codefendants entered "wired" guilty pleas whereby none of them received the benefit of the government's plea offer unless all three of them agreed to plead guilty. Before sentencing and again after sentencing Farley moved to withdraw his plea. The district court denied the motions. It also denied Farley's 28 U.S.C. § 2255 motion, which alleged ineffective assistance of counsel in connection with his guilty plea and his attempt to withdraw it. We affirm.

## I. Background

In November 1991 Farley and five others were named in a thirteen-count superseding indictment charging conspiracy to distribute cocaine base (crack) and multiple counts of distribution of crack and distribution of crack within 1,000 feet of a school. A jury trial for Farley and two codefendants, Mark Love and Ricardo Love, was scheduled to begin on February 20, 1992.[1] At a pretrial motions

---

1. Another codefendant, Tammy Brown, pleaded guilty on February 19, 1992.. On February 20, 1992 the government dismissed the charges against the fourth codefendant, Mike Love. That same day the government dismissed all counts against the fifth codefendant, Jeffrey Bonner, and later filed an information charging Bonner with distribution of a controlled substance.

hearing that morning, Farley's lawyer addressed the district court:

> [B]efore we start any motions, *the government has made a wired offer this morning,* which no one has discussed with their clients. It was just made this morning, and it certainly, I think, would behoove us to explore it. I'm going to make a request that ... the Court would break until possibly ... immediately after lunch, and allow counsel and all three clients [Farley, Mark Love and Ricardo Love] ... to discuss this since it is—they're all contingent upon one another.

Supplemental Appendix (S.A.) § A, 7 (emphasis added). The court recessed and the government offered Farley and the Loves a wired plea arrangement. All three agreed to plead guilty. Farley agreed to plead guilty to distribution of fewer than five grams of crack in violation of 21 U.S.C. § 841(b)(1)(C).

The court reconvened that afternoon and was informed that Farley and the Loves had agreed to plead guilty. The court then conducted a hearing pursuant to Fed.R.Crim.P. 11. The government proffered the evidence it had against Farley: On June 19, 1991 a confidential informant met with Farley and one of Farley's codefendants, Tammy Brown, and Farley sold the informant 2.3 grams of crack for $300; Brown apparently had arranged the deal. Farley agreed with the summary and admitted his guilt. The court accepted Farley's guilty plea and the Loves' pleas as well. No one brought up at the rule 11 hearing the fact that the pleas were wired.

Over two months later and before sentencing, Farley told his lawyer he wanted to withdraw his plea. His lawyer filed a Fed. R.Crim.P. 32(d) motion seeking to withdraw his guilty plea because, according to Farley, he was innocent and the government would suffer no prejudice if the plea were withdrawn.[2] According to Farley, he pleaded guilty because he feared his codefendants would testify against him. On May 6, 1992, the date scheduled for sentencing, the court

held a hearing on Farley's rule 32(d) motion. Farley's lawyer explained to the court that Farley did not allege a defect in the rule 11 proceeding but instead based his motion solely on his belated assertion of innocence. The court concluded that Farley simply had a change of heart, denied his rule 32(d) motion and sentenced him to 63 months' imprisonment. Farley filed a timely notice of appeal. In September 1992 we ordered Farley's appeal held in abeyance pending the disposition of the 28 U.S.C. § 2255 challenge Farley anticipated filing. Nine months later, in June 1993, Farley finally filed a section 2255 motion raising ineffective assistance of counsel claims arising from his guilty plea.

In November 1993 Farley filed a pleading styled in part a "supplement" to his pending section 2255 motion and in part a "motion to reconsider" his rule 32(d) motion, which had been denied eighteen months earlier. In the motion for reconsideration Farley for the first time claimed defects in the rule 11 proceeding. He argued that rule 11(e) (requiring disclosure of plea agreement) was violated because the parties never told the court at the rule 11 hearing that the pleas were wired. He also argued that rule 11(d) (requiring court to determine voluntariness of plea) was violated insofar as the court did not make a specific inquiry regarding whether his plea was knowing and voluntary in light of its wired nature.

On November 8, 1994 the district court denied Farley's motion for reconsideration and his ineffective assistance claims. Farley timely appealed and we consolidated the section 2255 appeal with his May 1992 appeal, originally held in abeyance. Farley raises two issues. First, he contends he should be permitted to withdraw his plea because of the alleged defects in the rule 11 proceeding. Second, he contends his plea should be set aside because his lawyer rendered ineffective assistance.

---

**2.** When Farley filed his motion, rule 32(d) provided: "If a motion for withdrawal of a plea of guilty ... is made before sentence is imposed, the court may permit withdrawal of the plea upon a showing by the defendant of any fair and just reason. At any later time, a plea may be set aside only on direct appeal or by motion under 28 U.S.C. § 2255." In 1994 the text of rule 32(d) was moved to rule 32(e) with minor stylistic changes. Here we refer to the rule as rule 32(d).

## II. Plea Withdrawal Based on Alleged Defects in the Rule 11 Proceeding

Farley argues that the district court abused its discretion in not allowing him to withdraw his plea because the court had not been advised that the pleas were wired and thus did not sufficiently examine whether Farley's plea was knowingly and voluntarily made.

### A.

■ We first determine the appropriate standard of review. Rule 32(d) distinguishes between pre- and post-sentencing attempts to withdraw guilty pleas. The rule first provides that a district court may grant a *presentence* motion to withdraw "upon a showing by the defendant of any fair and just reason" and we review for abuse of discretion the denial of the motion. *United States v. Ford*, 993 F.2d 249, 251 (D.C.Cir.1993). *After* sentencing, however, a plea "may be set aside only on direct appeal or by motion under 28 U.S.C. § 2255," Fed.R.Crim.P. 32(d), and the defendant must meet a more stringent standard than the "obviously more lenient 'fair and just' standard." *United States v. Watley*, 987 F.2d 841, 848 (D.C.Cir. 1993). On direct appeal the defendant must show that withdrawal of his plea is necessary to correct a "manifest injustice." *Id.* at 847–48. To prevail under section 2255 the defendant must show that the plea proceeding was tainted by "a fundamental defect which inherently results in a complete miscarriage of justice" or "an omission inconsistent with the rudimentary demands of fair procedure." *Hill v. United States*, 368 U.S. 424, 428, 82 S.Ct. 468, 471, 7 L.Ed.2d 417 (1962).

■ We disagree with Farley that his rule 11 defect claim should be reviewed for abuse of discretion under the "fair and just" standard because the claim was not raised before sentencing. Although Farley filed a rule 32(d) motion before sentencing, the mo-tion was based entirely on his claim of innocence and the lack of prejudice to the government should his plea be withdrawn. The district court denied the motion on May 6, 1992—after Farley's lawyer expressly represented at the rule 32(d) hearing that Farley did *not* allege any defect in the rule 11 proceeding—and sentenced Farley that day. Eighteen months later Farley filed a "motion to reconsider" the denial of his rule 32(d) motion. It was in his post-sentencing motion that Farley first argued he should be allowed to withdraw his plea based on the defective rule 11 proceeding. Although the district court ruled on the merits of the new claim, it lacked jurisdiction to do so because Farley's motion for reconsideration, filed eighteen months after entry of judgment, was untimely. *See United States v. Cook*, 670 F.2d 46, 48 (5th Cir.) (to be timely, motion for reconsideration must be filed within period allotted for noticing of appeal, *i.e.*, ten days after entry of judgment in criminal case), *cert. denied*, 456 U.S. 982, 102 S.Ct. 2255, 72 L.Ed.2d 860 (1982); *United States v. Miller*, 869 F.2d 1418, 1421 (10th Cir.1989) (same); *United States v. Russo*, 760 F.2d 1229, 1230 (11th Cir.1985) (same). Moreover, the district court lacked jurisdiction to entertain Farley's motion *qua* rule 32(d) motion because the rule expressly provides that *after* sentencing a plea may be set aside *only* on direct appeal or *via* a section 2255 motion. *See United States v. Todaro*, 982 F.2d 1025, 1028 (6th Cir.) (per curiam) (district court lacked jurisdiction to entertain under rule 32(d) post-sentencing motion to withdraw plea), *cert. denied*, ─── U.S. ───, 113 S.Ct. 2424, 124 L.Ed.2d 645 (1993); *United States v. Baker*, 790 F.2d 1437, 1438 (9th Cir.1986) (same).[3] Accordingly we will not review the merits of Farley's appeal from the denial of his "motion to reconsider." *Id.*

Instead we consider Farley's rule 11 defect claim on direct appeal. *See id.* We do so for this reason: Had we not held his May 1992 appeal in abeyance, Farley would have been

---

3. There may be a third reason the district court lacked jurisdiction to entertain the motion to reconsider: the May 1992 notice of appeal may have divested the district court of jurisdiction over the plea withdrawal motion and hence jurisdiction to entertain a subsequent motion to reconsider. *Compare United States v. Christy*, 3 F.3d 765, 767 (4th Cir.1993), *and United States v. Vroman*, 997 F.2d 627 (9th Cir.1993) (per curiam) *with United States v. Gargano*, 826 F.2d 610, 611–12 (7th Cir.1987), *and United States v. Greenwood*, 974 F.2d 1449, 1467–69 (5th Cir. 1992), *cert. denied*, ─── U.S. ───, 113 S.Ct. 2354, 124 L.Ed.2d 262 (1993).

able to then raise his rule 11 defect claim. His consolidated appeal represents, in part, his first opportunity to argue before us that the rule 11 proceeding was deficient. *Cf. United States v. Liboro*, 10 F.3d 861, 864 (D.C.Cir.1993). Because we review Farley's rule 11 claim on direct appeal, we must determine whether Farley satisfies the "manifest injustice" standard.[4] For the following reasons we conclude he does not.

## B.

■ The relevant rules here are rules 11(d) and 11(e)(2). Rule 11(d) requires the district court to determine that a guilty plea is "voluntary and not the result of force or threats or of promises apart from a plea agreement." Rule 11(e)(2) requires "disclosure of the [plea] agreement" to the district court at the time the plea is entered and "is properly read to mean that all 'material terms' (or material 'details' or 'elements') of the agreement must be disclosed." *United States v. Moore*, 931 F.2d 245, 249 (4th Cir.), *cert. denied*, 502 U.S. 857, 112 S.Ct. 171, 116 L.Ed.2d 134 (1991). "There is no standard short of requiring full disclosure of all material details of plea agreements that can reliably guarantee that guilty pleas are knowing and voluntary and fully understood by the parties." *United States v. Roberts*, 570 F.2d 999, 1007 (D.C.Cir.1977).

■ On the facts of this case we cannot conclude that setting aside Farley's plea is necessary to correct a manifest injustice because any variance from rule 11's provisions was harmless, at most. *See* rule 11(h) (harmless error). We first note that although Farley claims he is innocent (despite having

acknowledged his guilt at the rule 11 hearing and to the probation officer), he offers nothing more than his assertion to support his innocence. His "claim of innocence falls well short of presenting a legally cognizable defense to the charges to which he pled guilty." *United States v. Cray*, 47 F.3d 1203, 1209 (D.C.Cir.1995). As we there noted in reviewing the denial of a pre-sentence withdrawal motion, "A defendant appealing the denial of his motion to withdraw a guilty plea, unlike a defendant who has not first pled guilty, must do more than make a general denial in order to put the Government to its proof; he must affirmatively advance an objectively reasonable argument that he is innocent. . . ." *Id.*

■ Second, and more important, the district court adequately fulfilled its duty under rule 11(d). The court expressly asked Farley if he understood that he had a right to a jury trial and that he waived that right by pleading guilty. Farley answered in the affirmative. And the court expressly asked Farley whether "anyone" had threatened him or whether "anyone else" had forced him "in any way" to plead guilty. Joint Appendix (J.A.) § A, 13. Farley answered in the negative. Farley thus acknowledged that his plea was knowingly and voluntarily entered. *See United States v. Clements*, 992 F.2d 417, 418–20 (2d Cir.), *cert. denied*, ─── U.S. ───, 114 S.Ct. 316, 126 L.Ed.2d 262 (1993); *United States v. Morrow*, 914 F.2d 608, 613–14 (4th Cir.1990). "[T]he representations of the defendant [at a plea hearing] as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceeding" and the defendant's "declarations in open court carry a strong presumption of verity." *Blackledge*

---

4. The government points out that Farley's rule 11 defect claim should be treated as a section 2255 claim and therefore reviewed under the *Hill v. United States, supra*, standard. Only section 2255, the government maintains, could have conferred jurisdiction on the district court to review Farley's rule 11 claim, *see* rule 32(d); moreover, we held Farley's appeal in abeyance so he could pursue section 2255 relief. Indeed, his section 2255 motion and motion to reconsider flowed from the same claim—that he misunderstood the wired nature of his plea and therefore did not knowingly and voluntarily plead guilty. Nevertheless, we need not decide whether Farley's rule 11 claim is more appropriately reviewed under

the section 2255 standard as opposed to the "manifest injustice" standard: Farley does not meet the "manifest injustice" standard and therefore he necessarily would not meet the section 2255 standard, *see United States v. Rivera–Ramirez*, 715 F.2d 453, 456–57 (9th Cir.1983), *cert. denied*, 467 U.S. 1215, 104 S.Ct. 2657, 81 L.Ed.2d 364 (1984), assuming the two standards differ. *See United States v. Watson*, 548 F.2d 1058, 1063–64 (D.C.Cir.1977) (suggesting application of two standards to same set of facts might lead to different results). *But see* C. Wright, 3 *Federal Practice and Procedure* § 539, at 211 (2d ed. 1982) (suggesting both standards lead to identical results).

*v. Allison,* 431 U.S. 63, 73–74, 97 S.Ct. 1621, 1629, 52 L.Ed.2d 136 (1977); *see Key v. United States,* 806 F.2d 133, 136 (7th Cir. 1986). Significantly, our review of the rule 11 transcript shows that Farley expressed no reluctance when questioned by the court. *Cf. United States v. Daniels,* 821 F.2d 76, 79–80 (1st Cir.1987). *But see United States v. Caro,* 997 F.2d 657, 660 (9th Cir.1993) (because circuit precedent required district court to make more careful voluntariness inquiry when dealing with wired plea, failure to disclose wired nature necessitated remand for hearing on whether codefendants coerced appellant to plead guilty).

■■■■■■ In concluding that the failure to disclose, and to inquire about, the wired aspect of Farley's plea constituted at most harmless error, we necessarily reject Farley's proposed rule that the district court must undertake a special voluntariness inquiry when faced with a wired plea. For one thing, we fail to see what Farley would have gained from a more extensive inquiry. The district court asked Farley whether "anyone" had threatened him or whether "anyone else" had forced him "in any way" to plead guilty. Farley had the opportunity to express his concern or misunderstanding at that time. Had he expressed reluctance and put the court on notice, a more searching inquiry would have been warranted. *See United States v. Abreo,* 30 F.3d 29, 31 (5th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 681, 130 L.Ed.2d 613 (1994).[5]

## III. Ineffective Assistance of Counsel/Conflict of Interest

■■■ In his section 2255 motion Farley argued that his lawyer rendered ineffective assistance regarding the taking of his guilty plea and his attempt to withdraw it. To prevail on his sixth amendment claim Farley must demonstrate two things. First, he must show that his lawyer's performance was deficient, *i.e.,* that his lawyer's "representation fell below an objective standard of reasonableness." *Strickland v. Washington,* 466 U.S. 668, 687–88, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Second, he must show that his defense was prejudiced by the deficient performance. *Id.* at 687, 104 S.Ct. at 2064. To show prejudice when challenging a guilty plea on the ground of ineffective assistance, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart,* 474 U.S. 52, 59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985). We conclude that Farley cannot satisfy the *Strickland–Hill* standard.

### A.

■■■ Farley first claims his lawyer misadvised him that he had to plead guilty if his codefendants pleaded guilty or at least failed to make sure that Farley did not have that misunderstanding.[6] Second, he complains

---

**5.** We have no doubt that the wired element of Farley's plea agreement was a material one. The Supreme Court has observed that "a prosecutor's offer during plea bargaining of adverse or lenient treatment for some person *other* than the accused … might pose a greater danger of inducing a false guilty plea by skewing the assessment of the risks a defendant must consider." *Bordenkircher v. Hayes,* 434 U.S. 357, 364 n. 8, 98 S.Ct. 663, 669 n. 8, 54 L.Ed.2d 604 (1978) (dictum). In the case of a wired plea, "[q]uite possibly, one defendant will be happier with the package deal than his codefendant(s); looking out for his own best interests, the lucky one may try to force his codefendant(s) into going along with the deal." *Caro,* 997 F.2d at 659. Because a wired plea presents a greater risk of coercion than an independent plea, the district court should be informed during the rule 11 proceeding so that it can assess fully the voluntariness of the plea. *Daniels,* 821 F.2d at 78–80 (rule 11(e)(2) requires

government to disclose wired nature); *Caro,* 997 F.2d at 659–60 (same); *Clements,* 992 F.2d at 420 (wired nature "should be stated to the court").

**6.** We note that there is nothing in the record other than Farley's assertions to substantiate his claim that his lawyer gave such misadvice. To the contrary, the record casts a wide shadow of doubt on Farley's allegation. Farley submitted an affidavit below in which he said, "I agreed to plead guilty only because I understood that I would not be able to have a trial unless my codefendants also agreed to a trial." S.A. § C, 2. Nowhere in the affidavit did Farley say that his lawyer told him either that he had to plead guilty or that he could not request a jury trial. The only mention of what his lawyer advised was: "[H]e advised me that I *should* plead guilty to the charges." *Id.* at 1 (emphasis added). That advice was not unreasonable, or uncommon, espe-

his lawyer failed to disclose to the court at the rule 11 hearing that the pleas were wired. In short, he claims that as a result of his lawyer's deficiencies he entered his plea with the misunderstanding that he had no right to a jury trial. We disagree.

If indeed Farley had such a misunderstanding it should have evaporated during the rule 11 colloquy. Again, Farley expressly acknowledged at the rule 11 hearing that he understood he had a right to a jury trial and that he waived that right by pleading guilty. *See supra* Part IIB. More to the point, having reviewed the record, we cannot conclude there is a reasonable probability that Farley would have insisted on going to trial but for the alleged misunderstanding and failure to disclose. Farley pleaded guilty to one count of distribution of fewer than five grams of crack. He faced a conspiracy charge (and thus the possibility of an increased sentence based on any coconspirator's drugs) as well as multiple counts charging distribution of crack within 1,000 feet of a school. Farley was informed before his plea that one coconspirator, Tammy Brown, had already agreed as part of her plea agreement to testify against him. And the government evidently had audio tapes of the drug transactions charged in the indictment; the government represented below that Farley, the Loves and their lawyers listened to the tapes while they discussed the plea arrangement.

Even if we were to look just at the charge to which he pleaded guilty, it appears the government had a relatively straightforward and compelling case: An informant bought drugs from Farley in the presence of codefendant Brown and the government was prepared to call both the informant and Brown to testify at Farley's trial. Moreover, the district court was troubled by Farley's criminal history which included multiple drug convictions. Farley faced a stiff sentence under the guidelines had he been convicted, not to mention a mandatory minimum sentence pursuant to 21 U.S.C. § 841(b)(1)(A)(iii). Finally, Farley has not proffered even a hint of any defense, much less a suggestion that he could have succeeded had he gone to trial. *See United States v. Horne*, 987 F.2d 833, 836 (D.C.Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 153, 126 L.Ed.2d 115 (1993); *see also United States v. Del Rosario*, 902 F.2d 55, 58 (D.C.Cir.), *cert. denied*, 498 U.S. 942, 111 S.Ct. 352, 112 L.Ed.2d 316 (1990).

To sum up, Farley's mere allegation that he would have pleaded not guilty and gone to trial had his lawyer adequately informed him is not sufficient to overcome the prejudice prong of *Hill v. Lockhart. Horne*, 987 F.2d at 836. Because Farley has not established a reasonable probability that he would have insisted on going to trial, we reject his ineffective assistance claim.

cially in light of the charges Farley faced. Moreover, Farley explained at the rule 32(d) hearing: "[M]y understanding *given to me by attorney* [sic], was we couldn't—couldn't none of us do anything without the other ones...." J.A. § C, 16–17 (emphasis added). That advice was in fact correct as to a plea of guilty; all three codefendants had to accept the plea arrangement or else none could. But whether Farley's lawyer further advised that Farley could not go to trial if one of the Loves pleaded guilty is another matter altogether. Understandably the district court was not convinced that an evidentiary hearing on the issue was warranted eighteen months after Farley entered his plea. As the district court found at the rule 32(d) hearing, Farley simply had a change of heart. Having had an opportunity to observe and interrogate Farley at the rule 11 and rule 32(d) hearings, the district court credited neither Farley's alleged misunderstanding of the wired plea arrangement nor his belated assertion of innocence.

Moreover, there is an inconsistency in logic in Farley's assertion that he thought he could not go to trial unless his codefendants also agreed to plead not guilty. If he understood that everyone had to plead guilty or else no one could, and he does not appear to have misunderstood that, then any *one* of the defendants, by refusing to plead guilty, would have mandated trials for all three as Farley himself could have ensured by not agreeing to the wired plea. In short the only decision *requiring* the defendants' unanimity was the decision to plead guilty. We can appreciate that the district court was unmoved when Farley alleged at the rule 32(d) hearing that he thought he had no choice but to plead guilty. First, Farley—no stranger to the criminal justice system, *see infra*—had acknowledged at the rule 11 hearing that he understood both that he had the right to a jury trial and that he waived that right by pleading guilty. Moreover, his original rule 32(d) motion claimed simply that he "only entered his plea of guilty because he was fearful that the co-defendants would testify against him." J.A. § B, 2.

## B.

 Farley attempts to repackage the ineffective assistance claim into an "actual conflict of interest" claim. The argument here is that Farley's lawyer had to hold back in the initial rule 32(d) motion for fear of revealing that he (the lawyer) engaged in "malpractice" by allegedly misadvising Farley that he could not go to trial if his codefendants did not want to and by failing to disclose at the rule 11 hearing that the pleas were wired. If Farley could show that an actual conflict of interest adversely affected his lawyer's performance, prejudice would be presumed. *See Strickland,* 466 U.S. at 692, 104 S.Ct. at 2067; *Cuyler v. Sullivan,* 446 U.S. 335, 348–50, 100 S.Ct. 1708, 1718–19, 64 L.Ed.2d 333 (1980). But there are problems with his argument.

First, Farley never raised a conflict of interest claim below. While his section 2255 motion asserted that his lawyer rendered ineffective assistance by "filing a perfunctory [rule 32(d)] motion, which cited unidentified 'ethical' considerations that prevented more vigorous advocacy on Defendant's behalf," J.A. § D, ¶ 5(d), we have no doubt on this record that the ethical considerations that troubled his lawyer went to the fact that Farley, after already having admitted his guilt to the court and the probation officer and in the face of overwhelming evidence against him, decided to change his mind and claim innocence. Farley's conflict of interest claim, with its talk of malpractice and presumption of prejudice, is a far cry from his claim below about the caliber of the rule 32(d) motion.

Second, Farley has not shown that his lawyer should have been concerned about a malpractice claim had the lawyer drafted the rule 32(d) motion along the lines Farley now claims he should have. Both the misadvice and nondisclosure claims are proxies for Farley's central contention that he did not knowingly and voluntarily waive his right to a jury trial. The lawyer, without impugning himself, could have argued that Farley misunderstood what he had heard about the wired plea offer and therefore did not knowingly and voluntarily waive his right to a jury trial. Likewise the lawyer, who did inform the court about the wired offer hours before the rule 11 hearing, could have raised an issue about *the government's* failure to tell the court at the rule 11 hearing that the pleas were wired. In either case, Farley has not shown that a conflict of interest affected his lawyer's representation in preparing and arguing the rule 32(d) motion. *Cuyler,* 446 U.S. at 349, 100 S.Ct. at 1718.

With Farley's conflict of interest claim out of the picture, we are left with a straightforward *Strickland* challenge to his lawyer's performance on the rule 32(d) motion. Here Farley loses because he cannot show there is a reasonable probability that a more thorough rule 32(d) motion would have convinced the district court to set aside his plea. Even assuming that the lawyer held back in the rule 32(d) motion to protect himself—and there is nothing in the record to warrant that assumption—the misadvice and nondisclosure issues ultimately were brought to the court's attention (the former *via* Farley's testimony at the rule 32(d) hearing, the latter *via* the motion to reconsider filed by Farley's current lawyer) and the court did not think either of them sufficiently compelling to warrant setting aside Farley's plea even under rule 32(d)'s pre-sentencing "fair and just" standard.

For the foregoing reasons the judgment of the district court is

*Affirmed.*