UNITED STATES of America, Appellee,

v.

Luis Ramon HERNANDEZ, a/k/a Louise Ramon Hernandez, a/k/a Luis R. Hernandez–Coplin, a/k/a Luis Ayala Hernandez, a/k/a Louis Ramon Hernandez, Appellant.

Nos. 93–3089, 93–3097 and 95–3021.

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 9, 1996.

Decided March 29, 1996.

Carmen D. Hernandez, Assistant Federal Public Defender, argued the cause for appellant Luis Ramon Hernandez. With her on the briefs was A.J. Kramer, Federal Public Defender.

William H. Thompson, pro hac vice, Washington, DC, argued the cause for appellant Lucy Marina Hernandez. With him on the brief was Robert W. Mance, III.

Michael N. Levy, Assistant United States Attorney, argued the cause for appellee. With him on the brief were Eric H. Holder, Jr., United States Attorney, John R. Fisher, Roy W. McLeese, III and Mary–Patrice Brown, Assistant United States Attorneys.

Before: SENTELLE, RANDOLPH, and ROGERS, Circuit Judges.

Opinion for the Court filed by Circuit Judge RANDOLPH.

RANDOLPH, Circuit Judge:

Luis and Lucy Hernandez were married on March 23, 1991. Five months—and, be-

tween them, five arrests—later, they were indicted together for selling crack cocaine to an undercover police officer. The government offered each defendant a deal: plead guilty to the count charging distribution of 50 or more grams of cocaine base and the remaining two counts will be dropped. There was one catch. The plea offers were linked or, as is commonly said, "wired." Both defendants would have to plead guilty or the deal was off.

The Hernandezes came to terms and pled guilty in November 1991. In May 1993, the district court sentenced them each to the statutory minimum of ten years' imprisonment. In this consolidated appeal, Luis Hernandez claims the court erred in refusing to let him withdraw his plea before sentencing. Luis and Lucy Hernandez also raise claims relating to matters that are under seal. We have considered these latter claims and have decided to reject them; to explain why in a published opinion would reveal what the Hernandezes wish to remain confidential. Our opinion will therefore discuss only Luis Hernandez's contention that the district court erred in not allowing him to withdraw his guilty plea.

A district court "may permit" a defendant to withdraw his plea before sentencing "if the defendant shows any fair and just reason." FED.R.CRIM.P. 32(e). Luis Hernandez offered the district court what he considered to be two such reasons. The first related to the pressure he experienced from his mother-in-law and others who allegedly told him his wife could "remain free" only if he pled guilty. The second was that the district court's plea hearing had not been "in substantial compliance" with Rule 11 of the Federal Rules of Criminal Procedure. The district court denied Hernandez's motion to withdraw the plea on May 12, 1993, and sentenced him two days later. The court found no evidence that Hernandez's mother-in-law had "made threats to gain his plea," and it viewed its plea hearing as having established, in compliance with Rule 11, that Hernandez's plea was voluntary.

■ Hernandez appeals principally on the ground that the Rule 11 hearing was any-

thing but thorough because the district court did not then know the government had conditioned his fate on his wife's. Before accepting any plea of guilty, a district court must first assure itself that the defendant has entered the plea knowingly and voluntarily. FED.R.CRIM.P. 11(d). The court can do so only if it has "total disclosure of all material details" of the plea agreement. *United States v. Roberts,* 570 F.2d 999, 1007 (D.C.Cir.1977). The linking of one defendant's plea to another's is such a material detail. *United States v. Farley,* 72 F.3d 158, 164 n. 5 (D.C.Cir.1995). Wired pleas, we thought in *Farley,* could be coercive, *id.* (*citing Bordenkircher v. Hayes,* 434 U.S. 357, 364 n. 8, 98 S.Ct. 663, 668 n. 8, 54 L.Ed.2d 604 (1978)), especially when family members are involved. *See United States v. Pollard,* 959 F.2d 1011, 1021 (D.C.Cir.), *cert. denied,* 506 U.S. 915, 113 S.Ct. 322, 121 L.Ed.2d 242 (1992). Of course, much depends on which way the pressure, if any, flowed. The defendant standing before the court might have wanted to accept the deal despite his codefendant's reluctance. Through his counsel, he may have initiated the plea discussions and proposed the terms. Or the defense attorneys might have negotiated jointly on behalf of clients perfectly willing to plead guilty in return for the government's dropping of other charges against them.

A district court cannot be expected to inquire about such matters unless the plea wiring is brought to its attention. The obligation to disclose the terms of a plea agreement is one shared by defense counsel and the prosecutor. *Roberts,* 570 F.2d at 1007 n. 25. It is "the parties" who enter into the agreement and it is therefore "the parties" who have a duty under Rule 11(e)(2) to inform the court of the extent of their agreement. If there was a package deal here, Luis Hernandez and his attorney obviously knew of it. But at the Rule 11 hearing, the defense attorney said only that Luis had entered into a "joint plea" with his wife, Lucy, a statement that hardly alerted the court to the linkage between the pleas. For its part, the government said nothing on the subject. The revelation of plea wiring came much later, when the government wrote in its memorandum opposing Luis Hernandez's motion to withdraw his plea that "the plea

agreement with defendant was conditioned upon Lucy Hernandez also pleading guilty, as is customary in a case of this nature." * This brief remark is susceptible of an interpretation other than the one Luis now proposes. It implies that the government and Luis had cut a deal, but that the government would honor it only if Lucy decided to accept the offer made to her. This suggests that any pressure to plead was on Lucy, not Luis. Nothing transpired at the motion-to-withdraw hearing to clear things up, doubtless because Luis's motion did not rest on any alleged coercive effect of the plea wiring.

We do not condone the parties' failure to advise the district court of the plea wiring at the Rule 11 hearing. When we first sustained the practice of making one defendant's plea contingent on another's, we thought that if we banned such arrangements they might occur anyway through "winks and nods rather than in writing." 959 F.2d at 1021. The parties winked and nodded in this case: they not only failed to tell the court of the plea wiring; they also inserted into Hernandez's written plea agreement language that could have misled the court into thinking that Hernandez's plea was unrelated to his wife's. Given the concerns we have expressed here and in *Farley*, we trust that counsel for the defense and for the government will be more forthcoming in the future.

■ That said, we believe that any Rule 11 error here was harmless. Hernandez argues that if the court had known his plea was wired, it would have conducted a "searching inquiry" into his "mental instability" and "the coercion and distress" created by the plea wiring and the threats he claimed to receive as a result of it. But the court conducted an extensive Rule 11 colloquy before Hernandez entered his plea, and it then conducted another "searching inquiry" in a hearing on Hernandez's plea-withdrawal motion. Because the transcript of the hearing remains under seal, we are not at liberty to disclose anything more about its contents or to comment further on the district court's sealed memorandum opinion denying the motion. We have already revealed as much of this part of the record as we think appropriate,

given the reason for its confidentiality. We can say that after reviewing the proceedings, we see nothing that would cast doubt on the district court's judgment that Hernandez knowingly and voluntarily pled guilty. *Contrast United States v. Daniels*, 821 F.2d 76, 79 (1st Cir.1987).

■ Once we conclude that a plea was accepted in substantial compliance with Rule 11, we are "extremely reluctant" to find that the district court abused its discretion in denying a plea-withdrawal motion "even if the defendant makes out a legally cognizable defense to the charges against him." *United States v. Cray*, 47 F.3d 1203, 1208 (D.C.Cir. 1995). We are equally reluctant to reverse upon finding that the plea-acceptance proceedings suffered from only a harmless Rule 11 error. *See* Fed.R.Crim.P. 11(h). In any event, Hernandez has offered only a bare assertion of innocence, far short of the "objectively reasonable argument" for innocence a defendant in his position must advance. *See Cray*, 47 F.3d at 1209.

*Affirmed.*

---

\* The government tells us it was interested in a joint plea or none at all because a trial of one of these defendants would consume nearly as much time and resources as a trial of both.