# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

––––––

Argued September 21, 2009       Decided December 1, 2009

No. 07-3127

UNITED STATES OF AMERICA,
APPELLEE

v.

JONTE ROBINSON, ALSO KNOWN AS TAY,
APPELLANT

––––––

Consolidated with 08-3010, 08-3036

––––––

Appeals from the United States District Court
for the District of Columbia
(No. 04cr00128-13)

––––––

*Kristen Grim Hughes*, appointed by the court, argued the cause for the appellants. *Edward C. Sussman* and *Mary E. Davis*, appointed by the court, were on brief.

*Amanda J. Winchester*, Assistant United States Attorney, argued the cause for the appellee. *Jeffrey A. Taylor*, United States Attorney at the time the brief was filed, and *Roy W. McLeese III*, *Elizabeth Trosman*, and *John Philip Dominguez*, Assistant United States Attorneys, were on brief.

Before: HENDERSON, *Circuit Judge*, and EDWARDS and WILLIAMS, *Senior Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* HENDERSON.

KAREN LECRAFT HENDERSON, *Circuit Judge*: Jonte D. Robinson, Tommie Dorsey and Kenneth Dodd pleaded guilty to drug and racketeering conspiracies pursuant to "wired" plea agreements with the Government. Before sentencing, they moved to withdraw their guilty pleas. The district court denied their motions and sentenced them in accordance with their plea agreements. On appeal,[1] they contend that the district court failed to accept, and therefore left them the unfettered power to withdraw, their guilty pleas. They contend in the alternative that, if the district court accepted their pleas, it abused its discretion by denying their motions to withdraw them and by not conducting an evidentiary hearing thereon. We conclude that the district court accepted the appellants' guilty pleas and did not abuse its discretion in denying their motions to withdraw and their hearing request. Accordingly, we affirm.

I.

On October 19, 2005, a grand jury issued a superseding indictment charging nineteen defendants with, *inter alia*, drug and racketeering conspiracies, drug offenses and homicides. Superseding Indictment, *United States v. Franklin*, Cr. No. 04-128 (D.D.C. Oct. 19, 2005) (Indict.). The defendants were separated into three groups for trial. The third group included the appellants and a co-defendant named Larry Gooch, Jr. If convicted, the appellants faced life sentences and Gooch faced death.

---

[1] This court consolidated the appellants' appeals *sua sponte*. Order, *United States v. Robinson*, No. 07-3127 (D.C. Cir. May 20, 2008).

On January 17, 2007, after jury selection had begun, the appellants entered into plea agreements[2] with the Government under Federal Rule of Criminal Procedure (Rule) 11(c)(1)(C).[3] The agreements provided that each appellant would plead guilty to a drug conspiracy, in violation of 21 U.S.C. § 846, and a racketeering conspiracy, in violation of 18 U.S.C. §§ 1962(d) and 1963. They further provided that the racketeering pleas would require the appellants to admit to overt acts involving, *inter alia*, drugs, firearms and—for Robinson and Dorsey—murder. In return, the Government would agree to twenty-five-year prison sentences followed by five-year supervised-release terms. The plea agreements were "wired," which meant each was contingent on the others.

---

[2]Gooch proceeded to trial. Judgment, *United States v. Gooch*, Cr. No. 04-128-23 (D.D.C. Oct. 18, 2007). A jury found him guilty on twenty-six counts and the court sentenced him to life in prison. *Id.*

[3]Federal Rule of Criminal Procedure 11(c)(1)(C) provides in relevant part:

> An attorney for the Government and the defendant's attorney . . . may discuss and reach a plea agreement. The court must not participate in these discussions. If the defendant pleads guilty or nolo contendere to either a charged offense or a lesser or related offense, the plea agreement may specify that an attorney for the Government will: . . . agree that a specific sentence or sentencing range is the appropriate disposition of the case, or that a particular provision of the Sentencing Guidelines, or policy statement, or sentencing factor does or does not apply (such a recommendation or request binds the court once the court accepts the plea agreement).

Later that day, the district judge held a Rule 11 plea colloquy[4] with each appellant individually while the other two remained in the courtroom. Transcript of Plea, *United States v. Dodd*, Cr. No. 04-128-06, -13, -21 (D.D.C. Jan. 17, 2007) (Plea Tr.). Dodd went first, then Robinson, then Dorsey. *Id*. Each appellant pleaded guilty to the two conspiracy counts. *Id.*

Beginning in May 2007, the appellants filed several motions to withdraw their guilty pleas, all of which the district court denied. *United States v. Robinson*, 498 F. Supp. 2d 328 (D.D.C. 2007); Transcript of Sentence, *United States v. Dodd*, Cr. No. 04-128-06, -13, -21, at 24 (D.D.C. May 5, 2008) (Sent. Tr.). On May 5, 2008, the court sentenced each appellant to twenty-five years in prison followed by five years of supervised release, pursuant to their respective plea agreements. This appeal followed.

II.

The appellants want to withdraw their guilty pleas. Under Rule 11, a defendant may withdraw his guilty plea under any of three circumstances. First, "before the court accepts the plea," the defendant may withdraw it "for any reason or no reason." Fed. R. Crim. P. 11(d)(1). Second, if the court has accepted the plea, the defendant may withdraw it if he "show[s] a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). Third, if the court rejects a plea agreement made under Rule 11(c)(1)(A) or (C), it must permit the defendant to withdraw his guilty plea. Fed. R. Crim. P. 11(d)(2)(A).

---

[4]Before accepting a guilty plea, the court must inform the defendant of his trial rights, the nature of the charges against him, the possible penalties and the impact of the United States Sentencing Guidelines (Guidelines). Fed. R. Crim. P. 11(b). It must also determine that the plea is voluntary and based on fact. *Id.*

## A. Acceptance of Guilty Pleas

The appellants first argue that the district court failed to accept their guilty pleas and they are thus entitled to withdraw them "for any reason or no reason." Fed. R. Crim. P. 11(d)(1). The district court rejected this argument, concluding that it had accepted each appellant's plea. *Robinson*, 498 F. Supp. 2d at 332-33. We review the district court's decision de novo. *United States v. Jones*, 472 F.3d 905, 908-09 (D.C. Cir. 2007).

Guilty pleas are distinct from plea agreements. *United States v. Hyde*, 520 U.S. 670, 677-78 (1997) (rules "explicitly envision" guilty plea before performance of plea agreement); *United States v. Jones*, 472 F.3d at 908 ("[G]uilty pleas exist independently from plea agreements on which they rest . . . .") (citing *Hyde*, 520 U.S. at 677). Accordingly, a court may accept a defendant's guilty plea and temporarily refrain from accepting or rejecting a corresponding plea agreement. *See* Fed. R. Crim. P. 11(c)(3)(A) ("To the extent the plea agreement is of the type specified in Rule 11(c)(1)(A) or (C), the court may . . . defer a decision until the court has reviewed the presentence report."); *Hyde*, 520 U.S. at 678; *Jones*, 472 F.3d at 908. In this case, the district court refrained from accepting or rejecting the appellants' plea agreements at the Rule 11 hearing, pending presentence reports. *See* Plea Tr. at 8-9. The appellants contend that, in so doing, the court failed to clearly distinguish between their plea agreements and their guilty pleas, which left them with the belief that it had accepted neither.

In *Jones* we held that, although the district court had used language "loosely" at the defendant's plea hearing, the transcript viewed as a whole manifested that the court had accepted the defendant's guilty plea and left him "no reasonable basis" for thinking otherwise. 472 F.3d at 909. The same is true here. While the district court at times used the terms "plea" and "plea agreement" interchangeably, *e.g.*, Plea Tr. at 18, 24-25, 29, 35, 42, the transcript of the plea hearing, read in its entirety,

establishes that the court accepted the appellants' guilty pleas. The court asked each appellant how he pleaded as to the two separate counts. Plea Tr. at 25, 37-38, 46. After each appellant twice responded, "Guilty," the court told him that it "accept[ed]" his plea. *Id.* at 25, 38, 46. Despite the court's occasional imprecision, therefore, it plainly accepted the appellants' guilty pleas and left them "no reasonable basis" for thinking otherwise. *Jones*, 472 F.3d at 909.

The appellants also contend that the acceptances were ineffective because the court referred to them as "conditional." Reply Br. 3. That argument failed in *Jones* and it fails here. As was true in *Jones*, "acceptance was 'conditional' only in that under Rule 11(d)(2)(A) the court had to give [the defendant] an opportunity to withdraw the plea if it ultimately rejected the plea agreement. . . . [S]uch conditions subsequent do not nullify otherwise valid acceptances." *Jones*, 472 F.3d at 908 (citing *Hyde*, 520 U.S. at 679-80). So too, here, the court's use of the term "conditional" did not nullify its acceptance of the appellants' guilty pleas. Rather, it appropriately signified that, if the court subsequently rejected their plea agreements, the appellants would be permitted to withdraw their guilty pleas. *See id.*; Fed. R. Crim. P. 11(d)(2)(A). Accordingly, we conclude that the district court accepted the appellants' pleas.

## B. Denial of Motions to Withdraw Pleas

Granting, *arguendo*, that the district court accepted their guilty pleas, the appellants next contend that it erred in denying their motions to withdraw them. Pursuant to Rule 11(d)(2)(B), a district court may grant a presentence motion to withdraw a guilty plea if "the defendant can show a fair and just reason." We review a district court's denial of such a motion for abuse of discretion. *United States v. Curry*, 494 F.3d 1124, 1128 (D.C. Cir. 2007). We focus on three factors: "(1) 'whether the defendant has asserted a viable claim of innocence'; (2) 'whether the delay between the guilty plea and the motion to

withdraw has substantially prejudiced the government's ability to prosecute the case;' and (3) 'whether the guilty plea was somehow tainted.'" *United States v. Taylor*, 139 F.3d 924, 929 (D.C. Cir. 1998) (quoting *United States v. Ford*, 993 F.2d 249, 251 (D.C. Cir. 1993)). The third factor is the "most important," *Ford*, 993 F.2d at 251, so we address it first. *See United States v. Cray*, 47 F.3d 1203, 1208 (D.C. Cir. 1995).

### 1. Taint

All three appellants argue that the district court impermissibly intruded on the plea-bargaining process. Their argument relies on Rule 11(c)(1), which provides, "An attorney for the Government and the defendant's attorney . . . may discuss and reach a plea agreement. The court must not participate in these discussions." In support of their argument, the appellants quote statements the court made at the plea hearing regarding the bargain to which the parties had agreed. Appellants' Br. 18. Several related to the court's task of calculating the applicable Guidelines range in the context of a Rule 11(c)(1)(C) plea agreement. Plea Tr. at 8-10. As the court pointed out, however, its calculation would not alter the terms of their respective agreements. Plea Tr. at 19. Other statements put the parties on notice the court was considering rejecting the plea agreements, as is its prerogative under Rule 11(c)(5). None of these statements constitutes improper participation by the court in plea agreement discussions.

The appellants invoke *United States v. Baker*, which articulates reasons for prohibiting judicial participation in the plea bargaining process—specifically that it risks coercion, compromises a judge's impartiality and gives a misleading impression as to the judge's role. 489 F.3d 366, 370 (D.C. Cir. 2007). But the statements referenced above do not relate to *Baker's* concerns. They did not coerce the appellants into their plea agreements; the parties had agreed to plead guilty before the statements occurred. They were not partial to one party;

instead they conveyed skepticism regarding the agreement *both* sides wanted. They did not convey a misleading impression as to the court's role; to the contrary, they spoke to a quintessential judicial function. *See United States v. Kraus*, 137 F.3d 447, 454 (7th Cir. 1998) (district judge's assessment of plea agreement in light of facts and Guidelines constituted "exactly the kind of 'active evaluation' of the plea agreement that Rule 11 and the cases interpreting it envision" (quoting *United States v. Crowell*, 60 F.3d 199, 201-02, 203-04 (5th Cir. 1995))). In sum, the district court did not improperly participate in the plea agreement process.

The appellants also argue that their guilty pleas were tainted based on the United States Attorney's alleged coercion. They contend that they were coerced into accepting wired plea agreement offers with short shelf lives while they were all confined in a holding cell. *United States v. Holland* is on point. 117 F.3d 589 (D.C. Cir. 1997). In that case, two brothers entered into a wired plea agreement "on the eve of trial" on drug conspiracy charges. *Id.* at 592. After pleading guilty, one brother moved to withdraw his plea, claiming that the last-minute wired plea offer involving his brother was coercive. *Id.* at 593. We rejected that argument, holding that, although wired plea agreements "'could be coercive, especially when family members are involved,'" the Rule 11 proceeding adequately addressed any possible coercion in that case. *Id.* at 594 (quoting *United States v. Hernandez*, 79 F.3d 1193, 1194 (D.C. Cir. 1996)). We further held that "[a] district court does not have to 'undertake a special voluntariness inquiry when faced with a wired plea.'" *Id.* (quoting *United States v. Farley*, 72 F.3d 158, 164 (D.C. Cir. 1995)). Just as the plea procedure in *Holland* sufficed to dispel any coercion, so too did the procedure here. All three defendants affirmed during their plea colloquies that they were entering the pleas of their own free will. Plea Tr. at 23-24, 32-33, 46. The court was aware of the wired nature of the plea agreements, *see*, *e.g.*, *id.* at 29, 41, and repeatedly probed

each appellant's acquiescence to their terms. *See generally* Plea Tr. Nothing about their particular circumstances required the district court to seek further assurances of voluntariness. In short, the appellants' wired plea agreements did not taint their guilty pleas.

Next, the three appellants argue that their pleas were tainted because the district court did not inform them that they would be unable to withdraw their pleas unless it rejected their plea agreements. None of the cases the appellants cite,[5] however, can be fairly read to impose that obligation on the district court. Nor have we discovered any authority to that effect.[6] The appellants' pleas were not tainted by the court's failure to comply with a nonexistent obligation. Relatedly, the appellants argue that the district court improperly intimated that they could withdraw their guilty pleas any time they wished. It did no such thing. The court merely noted that, should any of the appellants move to withdraw his guilty plea, he would breach his wired plea agreement. Plea Tr. at 21, 29, 41-42. This was an explicit term in all three plea agreements. Plea Agreement, *United States v. Dodd*, Cr. No. 04-128-06, at 5 (D.D.C. Jan. 17, 2007) (Dodd Plea Agr.); Plea Agreement, *United States v. Robinson*, Cr. No. 04-128-13, at 5 (D.D.C. Jan. 17, 2007) (Robinson Plea Agr.); Plea Agreement, *United States v. Dorsey*, Cr. No. 04-128-21, at 6 (D.D.C. Jan. 17, 2007) (Dorsey Plea Agr.).

In addition to the arguments all three appellants make, appellant Dodd contends that his guilty plea is tainted by virtue

---

[5]Appellants' Br. 17 (citing *Jones*, 472 F.3d 905; *Holland*, 117 F.3d 589; *Cray*, 47 F.3d 1203).

[6]In contrast, Rule 11(c)(3)(B) provides, "To the extent the plea agreement is of the type specified in Rule 11(c)(1)(B), the court must advise the defendant that the defendant has no right to withdraw the plea if the court does not follow the recommendation or request."

of amendments to the Guidelines. After Dodd pleaded guilty, but before the district court sentenced him, the United States Sentencing Commission (Commission) amended the Guidelines by reducing the sentences for most cocaine base offenses. *See* Sentencing Guidelines for the United States Courts, 72 Fed. Reg. 28,558, 28,571-73 (May 21, 2007). According to Dodd, "he should be allowed to withdraw his plea as, in retrospect, it was not based on consideration of the Sentencing Guidelines applicable to a disposition of his case." Appellants' Br. 30.

We disagree. Even though Dodd may have considered the Guidelines in deciding whether to accept the Government's offer or go to trial,[7] the district court was not obliged to set aside his guilty plea after the Commission amended them. In *Brady v. United States*, the Supreme Court held that "[a] defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended . . . the likely penalties attached to alternative courses of action." 397 U.S. 742, 756-57 (1970). The same

---

[7]It is not clear that the Guidelines amendments would have in fact affected Dodd's potential sentence. Dodd pleaded guilty to drug and racketeering conspiracies. Sent. Tr. at 25. In return, the Government agreed to dismiss all non-conspiracy charges, including nine cocaine base counts. Dodd Plea Agr.; Indict. 36-47. But the Guidelines amendments did not lower the sentencing range for the conspiracy counts to which Dodd pleaded guilty, Order, *United States v. Dodd*, Cr. No. 04-128-06 (D.D.C. Mar. 19, 2009), because the conspiracies entailed distributing and possessing with intent to distribute thirty kilograms or more of phencyclidine (PCP) separate from cocaine base. *Id.*; Dodd Plea Agr. at 3. According to Dodd's calculation, if he had gone to trial and been acquitted on the conspiracy charges, the Guidelines range he would have faced on the remaining charges—including the nine non-conspiracy cocaine base counts—would have been lower than the twenty-five-year sentence to which he agreed. Appellants' Br. 25.

principle applies here. A guilty plea does not automatically become tainted if a change in the law alters a variable that the defendant considered when he decided to plead guilty. *See id.*; *see also United States v. Sahlin*, 399 F.3d 27, 31 (1st Cir. 2005) ("[T]he possibility of a favorable change in the law occurring after a plea is one of the normal risks that accompany a guilty plea.") (citing *Brady*, 397 U.S. at 757).

Dodd cites *United States v. Dews*, 551 F.3d 204 (4th Cir. 2008), *vacated and reh'g en banc granted*, No. 08-6458 (4th Cir. Feb. 20, 2009), *appeal dismissed as moot*, No. 08-6458 (4th Cir. May 4, 2009), and *Melendez-Perez v. United States*, 467 F. Supp. 2d 169 (D.P.R. 2006), for support. As indicated, the Fourth Circuit vacated *Dews*, granted rehearing en banc and ultimately dismissed the appeal as moot. 551 F.3d 204.[8] In *Melendez-Perez*, the district court reduced the defendant's sentence pursuant to 18 U.S.C. § 3582(c)(2) because the parties and the court had been unaware at sentencing of an extant Guidelines amendment that put the agreed-upon sentence outside the recommended range. 467 F. Supp. 2d at 175-76. The

---

[8]In *Dews*, the Fourth Circuit held that 18 U.S.C. § 3582(c)(2) ("[I]n the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission . . . the court may reduce the term of imprisonment . . . .") authorized the district court to account for Guidelines amendments by reducing a sentence to which the defendant agreed pursuant to Rule 11(c)(1)(C). 551 F.3d at 209.

Other circuits have reached the opposite result, concluding that a sentence imposed pursuant to a Rule 11(c)(1)(C) plea agreement is not "based on" the Guidelines and thus does not come within the scope of 18 U.S.C. § 3582(c)(2). *See*, *e.g.*, *United States v. Main*, 579 F.3d 200, 203 (2d Cir. 2009); *United States v. Sanchez*, 562 F.3d 275, 280 (3d Cir. 2009); *United States v. Scurlark*, 560 F.3d 839, 841 (8th Cir. 2009). *But see United States v. Cobb*, No. 08-1213, 2009 WL 3418214, at *5 (10th Cir. Oct. 26, 2009) (following *Dews*).

district court sought to remedy "an unjust situation essentially provoked by its lack of relevant and essential information prior to sentencing." *Id.* at 175. It stated that "it would have assuredly rejected the plea agreement at sentencing if it had been aware of the effectiveness" of the Guidelines amendment. *Id.* at 176. In this case, Dodd moved to withdraw his guilty plea, not reduce his sentence.[9] Further, the district court here lacked no "relevant and essential information" when it sentenced Dodd; it was aware of the Guidelines amendments when it imposed the sentence to which Dodd and the Government had agreed. *See*, *e.g.*, Sent. Tr. at 10 ("[S]ubsequent to his plea the guidelines have been changed for crack . . . ."). In sum, contrary to Dodd's assertions, the fact that his sentencing occurred after the Guidelines amendments does not mean that he was entitled to withdraw his plea. *See Brady*, 397 U.S. at 757. Likewise, the fact that the district court could have rejected the plea agreement and vacated his guilty plea in light of the Guidelines amendments does not mean that Dodd was similarly empowered. *See* Fed. R. Crim. P. 11(c)(5) (enabling district court to reject plea agreement and thereafter permit defendant to withdraw guilty plea).

Finally, Dodd asserts that his argument is "based on the well-established principle that courts are to use the Sentencing Guidelines in effect on the date of sentencing." Reply Br. 13 (citing USSG § 1B1.11(a)). This gains him no ground. To the extent the district court "used" the Guidelines at all in sentencing Dodd, there is no reason to believe it used any but those "in effect at the date of sentencing." *See*, *e.g.*, Sent. Tr. at

---

[9]Dodd also moved for a sentencing reduction pursuant to 18 U.S.C. § 3582(c)(2). Order, *United States v. Dodd*, Cr. No. 04-128-06 (D.D.C. March 20, 2009). The district court denied his motion, *id.*, and Dodd does not appeal that denial.

23 (assessing Dodd's sentencing prospects under the "guidelines as they now exist").[10]

Appellant Dorsey also raises a separate claim, contending that the district court failed to advise him of certain trial rights pursuant to Rule 11(b)(1). He makes this objection for the first time on appeal and therefore we review for plain error only. *See In re Sealed Case*, 283 F.3d 349, 352 (D.C. Cir. 2002). "To prevail under the plain error standard, an appellant bears the burden of demonstrating that (1) the court clearly erred, (2) the error implicated the appellant's substantial rights, and (3) the error has 'seriously affected the fairness, integrity or public reputation of the judicial proceedings.'" *Baker*, 489 F.3d at 371 (quoting *In re Sealed Case*, 283 F.3d at 352).

Dorsey was the last of the appellants to plead guilty on January 17, 2007. Plea Tr. By failing to separately advise Dorsey of several trial rights, including the right to plead not guilty, be tried by a jury, confront and cross-examine witnesses, be protected from self-incrimination, testify and present evidence and compel the attendance of witnesses, the district court clearly erred. *See* Fed. R. Crim. P. 11(b)(1)(B), (C), (E); Plea Tr. at 38. Dorsey has thus satisfied the first requirement for plain error. *See Baker*, 489 F.3d at 371. In order to establish that the court's error affected his substantial rights, however, he "must show a reasonable probability that, but for the error, he

---

[10]It is also worth noting that the transcript of Dodd's plea colloquy is at odds with his argument regarding the Guidelines amendments' effect. During the colloquy, the district court stated, "The guideline analysis does not impact the real sentence because the real sentence to which you've agreed is 25 years. . . . Do you understand that?" Plea Tr. at 19. Dodd replied, "Yes, ma'am." *Id.* When the court repeated that the Guidelines calculation "doesn't make a difference because your agreement is for 25 years," Dodd replied, "Right." *Id.*

would not have entered the plea." *United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004). Although Dorsey makes the argument that, had the district court informed him of the rights it omitted, he would not have pleaded guilty, Appellants' Br. 24, we are not persuaded. The court's omissions caused him to plead guilty, he asserts, because in their absence he "believed he had no choice but to" enter a guilty plea. *Id.* For several reasons, this assertion defies belief. First, Dorsey read and signed a plea agreement informing him of his trial rights. Dorsey Plea Agr. at 5; *see Dominguez Benitez*, 542 U.S. at 85 (defendant's familiarity with plea agreement "tends to show that the Rule 11 error made no difference to the outcome"); *cf. In re Sealed Case*, 283 F.3d at 355 (Rule 11 omission not plain error in part because of defendant's familiarity with factual proffer covering omitted content). Indeed, during the plea colloquy, the court asked Dorsey if he had been "able to understand and read the plea agreement," to which he responded, "Yes, ma'am." Plea Tr. at 39. Second, Dorsey acknowledged during his plea hearing that his lawyer had advised him as to his "choices" and his "options." Plea Tr. at 39-40; *see In re Sealed Case*, 283 F.3d at 355 (Rule 11 omission not plain error in part because defendant "was represented and advised by counsel throughout"). Third, Dorsey had just sat through complete Rule 11 plea colloquies with Dodd and with Robinson. Plea Tr. at 1-38. While Dorsey may not have been paying strict attention (an assertion he does not directly make), his presence throughout two complete plea colloquies makes it less likely that the judge's omissions in his case caused him to plead guilty. In short, Dorsey has not shown "a reasonable probability" that the district court's error affected his substantial rights. *Dominguez Benitez*, 542 U.S. at 83. We need not address, therefore, whether the error "'seriously affected the fairness, integrity or public reputation of the judicial proceedings.'" *Baker*, 489 F.3d at 371 (quoting *In re Sealed Case*, 283 F.3d at 352). The district court's omissions during

Dorsey's Rule 11 colloquy do not constitute plain error requiring withdrawal of his guilty plea.

In sum, the district court did not abuse its discretion in rejecting the appellants' arguments that their guilty pleas were tainted. The most important factor in our inquiry therefore weighs in the Government's favor. *See Ford*, 993 F.2d at 251. If this factor favors the Government, "we will be extremely reluctant to reverse the district court" and an appellant will have to "shoulder an extremely heavy burden if he is ultimately to prevail." *Cray,* 47 F.3d at 1208. We conclude that the appellants have not met that burden.

2. *Viable Defense*

We next consider whether the appellants have asserted "viable claims of innocence," which we dub "legally cognizable defenses." *Curry*, 494 F.3d at 1129. To satisfy this standard, an appellant "'must do more than make a general denial in order to put the Government to its proof; he must affirmatively advance an objectively reasonable argument that he is innocent, for he has waived his right simply to try his luck before a jury.'" *Id.* (quoting *Cray*, 47 F.3d at 1209).

All three appellants make broad denials in connection with their motions to withdraw their guilty pleas. Robinson "insists he is innocent of all . . . charges. He maintains that despite any statements to the contrary made at the plea proceeding, he neither participated in [homicides to further the racketeering conspiracy nor] had any intent to join with any group or other individuals in an organized or coordinated sale of drugs." Supplemental Submission in Support of Motion to Withdraw Guilty Plea at 2, *United States v. Robinson*, Cr. No. 04-128-13 (D.D.C. July 12, 2007). For his part, Dodd

> maintains he is innocent of the charges to which he pled guilty . . . . [He] avers he was never a member of the so-called John Franklin

conspiracy and only knew Franklin from around the neighbor hood [sic]. [He] further states that he never sold PCP, pills, or crack for John Franklin; he never bought PCP, pills, or crack from John Franklin; he never worked for John Franklin; and he never took orders from John Franklin. Mr. Dodd says John Franklin never supplied him with any drugs.

Supplemental Submission in Support of Defendant's Motion to Withdraw His Guilty Plea at 13, *United States v. Dodd*, Cr. No. 04-128-6 (D.D.C. July 18, 2007) (internal citation and quotations omitted). Dorsey adopts Robinson's and Dodd's denials. Motion to Adopt and Conform the Motion to Withdraw Guilty Plea Filed by Jonte Robinson, *United States v. Dorsey*, 04-128-21 (D.D.C. July 18, 2007); Motion to Adopt and Conform the Motion to Withdraw Guilty Plea Filed by Kenneth Dodd, *United States v. Dorsey*, 04-128-21 (D.D.C. July 19, 2007). The district court rejected these claims, concluding that the appellants "do not offer anything that would support their bald statements of innocence." *Robinson*, 498 F. Supp. 2d at 336-37.

The appellants liken their case to *McCoy*, in which we held that the defendant had "adequately presented cognizable defenses to the charges against him." 215 F.3d at 106-07. But *McCoy* in fact illustrates the inadequacy of their innocence claims. There, the charges involved two discrete drug deals and McCoy specifically challenged the Government's proof as to each incident. *Id.* at 107. Here, the Government charged the appellants with two vast conspiracies and numerous overt acts. As noted, the appellants responded with summary assertions of innocence only. Their attempted defense therefore has none of the force of that mounted in *McCoy*. This factor, too, then, cuts against the appellants.

*3. Delay*

The final factor we consider is "whether the delay between the guilty plea and the motion to withdraw has substantially prejudiced the Government's ability to prosecute the case." *Ford*, 993 F.2d at 251 (internal quotation omitted). In *Brady*, we explained that "[t]he most common form of prejudice is the difficulty the Government would encounter in reassembling far-flung witnesses in a complex case, but prejudice also occurs where a defendant's guilty plea removed him from an ongoing trial of co-defendants, who were then found guilty." 514 F.2d at 222. Both types of prejudice apply here. Before the appellants' attempts to withdraw their pleas, the Government had conducted two complex trials of their co-defendants. *Robinson*, 498 F. Supp. 2d at 337 n.7. The trials involved approximately one hundred witnesses and lasted about five months each. *Id.* Moreover, as the district court noted,

> The United States was ready, willing, and able to begin trial for these Defendants when they decided to plead guilty. That trial proceeded against Mr. Gooch alone . . . . To now allow these Defendants to withdraw their pleas and require the prosecutors to try the same case a third time . . . would be extremely prejudicial to the interests of the United States and the people of Washington, D.C.

*Id.* at 337. While the appellants correctly note that the delay factor is not dispositive, *Cray*, 47 F.3d at 1208, it nevertheless favors the Government here. Given that the other two factors also favor the Government, we conclude that the district court did not abuse its discretion in denying the appellants' motions to withdraw their guilty pleas.

## C. No Evidentiary Hearing

The appellants also contend that the district court abused its discretion in denying their request for an evidentiary hearing. This argument has no merit. "A district court need hold an evidentiary hearing on a plea withdrawal only where the defendant offers 'substantial evidence that impugns the validity of the plea.'" *West*, 392 F.3d at 457 n.4 (quoting *United States v. Redig*, 27 F.3d 277, 280 (7th Cir. 1994)). Our analysis above amply illustrates that none of the appellants has met this burden. Therefore, the district court did not abuse its discretion in denying them an evidentiary hearing.

As the Supreme Court noted in *Hyde*, it is no trifling matter to allow a defendant to withdraw a guilty plea "[a]fter [he] has sworn in open court that he actually committed the crimes, after he has stated that he is pleading guilty because he is guilty, after the court has found a factual basis for the plea, and after the court has explicitly announced that it accepts the plea." 520 U.S. at 676. All of this occurred at the appellants' plea hearings and the district court correctly denied their attempts to undo the same.

For the foregoing reasons, we affirm the judgment of the district court.

*So ordered*.