# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-2650

_____

United States of America,          \*

                                   \*

          Appellee,         \*

                                   \*   Appeal from the United States

       v.                \*   District Court for the

                                   \*   Southern District of Iowa.

Brandon Reeves Tyerman,      \*

                                   \*

          Appellant.       \*

_____

Submitted: February 17, 2011
Filed: June 9, 2011

_____

Before SMITH, GRUENDER, and BENTON, Circuit Judges.

_____

SMITH, Circuit Judge.

Brandon Reeves Tyerman challenges his conviction for being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), arguing that the district court erred in denying his request to withdraw his *Alford* plea[1] because he had the absolute right to withdraw his guilty plea under Federal Rule of Criminal Procedure

---

[1]Tyerman "entered a plea pursuant to *North Carolina v. Alford*, 400 U.S. 25, 37, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970) (allowing a defendant to plead guilty without admitting guilt by acknowledging the government's evidence is sufficient to obtain a conviction)." *United States v. Woods*, 596 F.3d 445, 447 (8th Cir. 2010).

11(d)(1). We agree and accordingly reverse the judgment of the district court and remand the case for further proceedings consistent with this opinion.[2]

## I. *Background*

Pursuant to a Federal Rule of Criminal Procedure 11(c)(1)(C)[3] plea agreement, Tyerman entered an *Alford* plea to being a felon in possession of a firearm, in

---

[2]On appeal, Tyerman also asserts that the district court clearly erred in denying his motion to suppress the firearm and abused its discretion in ruling that purported "prior bad acts" were admissible. At oral argument, Tyerman's counsel agreed that if this court ruled in Tyerman's favor on the plea-withdrawal issue, then we need not address the other two issues. Additionally, at oral argument, the government conceded that, because it is unknown if and how this case will proceed on remand should we find that the district court erred in not permitting Tyerman to withdraw his plea, then this court's ruling on the remaining issues would constitute an advisory opinion. Therefore, we decline to address the two remaining issues.

[3]Rule 11(c)(1)(C) provides that

[a]n attorney for the government and the defendant's attorney, or the defendant when proceeding pro se, may discuss and reach a plea agreement. The court must not participate in these discussions. If the defendant pleads guilty or nolo contendere to either a charged offense or a lesser or related offense, the plea agreement may specify that an attorney for the government will . . . agree that a specific sentence or sentencing range is the appropriate disposition of the case, or that a particular provision of the Sentencing Guidelines, or policy statement, or sentencing factor does or does not apply (such a recommendation or request binds the court once the court accepts the plea agreement).

violation of § 922(g)(1).[4] The plea agreement called for a sentence of 50 months' imprisonment, to run consecutive to Tyerman's state court sentence.

At the change-of-plea hearing, Tyerman confirmed to the district court that he had entered into a plea agreement with the government and had read the plea agreement before he signed it. The court explained to Tyerman that it could only accept Tyerman's guilty plea if it was

> convinced of three things:
>
> 1. The only reason you're pleading guilty is because you think the Government can prove you guilty by a standard of beyond a reasonable doubt, okay?
>
> 2. You understand that by pleading guilty, as opposed to being found guilty, you give up important rights that you would otherwise have under the Constitution, and under the rules and the statutes of the United States. Do you understand that?

Tyerman answered, "Yes." The court then stated:

> The third thing you have to understand, and I have to make certain you understand before I'm allowed the discretion to accept your plea, is that you know the maximum punishments that could come to you as a result of your conviction of Count 3 of the superseding indictment; do you understand that?

---

[4]The plea agreement was also conditional, as Tyerman reserved the right to appeal the district court's denial of his motion to suppress the firearm and its ruling on the government's motion in limine.

Tyerman answered, "Yes, but it's my understanding, and you just correct me if I'm wrong, that if the Court decides to impose more than what's agreed, that I have the right to withdraw the plea." The court responded that Tyerman was "absolutely right." Then, the court stated:

> And so you understand that if I don't accept the agreed-upon sentence that you and the Government have agreed to in paragraph 4 of the plea agreement, Mr. Tyerman, that you would be allowed the opportunity to withdraw your plea, go to trial, and your not guilty plea would be reinstated? Do you understand that?

Tyerman answered, "That is the case, Your Honor."

Tyerman also confirmed his understanding that he was giving up or waiving his rights to a jury trial. When asked whether he understood that, if the court accepted his plea, such plea "has the same legal impact as if the jury heard all of the evidence, returned a verdict of guilty against you," Tyerman responded, "Yeah." Tyerman also understood that he had the right to persist in his previously made plea of not guilty and indicated his understanding that his "plea is a waiver or a giving up of all [his] important constitutional and trial rights" that the court previously described. He verified that he was "pleading guilty today because [his] plea is voluntary" and that his "decision to plead guilty [was not] the result of any promises, other than the written promises that appear in the plea agreement."

The court asked Tyerman whether he "believe[d] that based upon the facts recited by the Assistant U.S. Attorney, that the Government has sufficient evidence that a jury would find [him] guilty of Count 3 of the indictment by a standard of beyond a reasonable doubt," and Tyerman answered, "Yes, Your Honor." Then the court stated:

Mr. Tyerman, *I'm going to put off accepting your plea* because I want the opportunity to review the presentence report [(PSR)] . . . .

* * *

To the extent that [the probation officer] can give this some priority, I'd appreciate it. I never—I've tried one other *Alford* plea in my 12 years, three months, two days, and two hours here, and I've rejected that, so I'm very concerned that this meets the legal requirements. Both of the lawyers have worked hard on it, and I *want to make sure that if it's not something I can accept, that we give Mr. Tyerman the right to withdraw, if he needs to withdraw*, and if we can, we need to sentence him.

* * *

*I'm going to put off accepting your plea* until the preparation of the presentence report.

(Emphasis added.)

The government then asked the court whether it was "going to make the findings as to the voluntariness." The court replied, "Yeah. *I generally don't make those until I accept the plea*, but I think I will today because of where we're at." (Emphasis added.) The court then made the requisite voluntariness findings.

Over nine months later, Tyerman's sentencing hearing commenced. At the beginning of the proceedings, the district court stated, "The record should show that the Court previously took a conditional plea from the Defendant." Tyerman's counsel then informed the court that Tyerman "against [counsel's] advice, . . . want[ed] to withdraw his plea." The court noted that Tyerman had "prepared an extensive statement" and that the "reason we were late starting this morning is that counsel for the Government and the Defendant came back to chambers. And [Tyerman's counsel] gave [the court] Mr. Tyerman's statement, which [the court] had the opportunity to read." To "preserve error," the court "suggested that [Tyerman's] counsel make a

-5-

record on that statement that he permitted [the court] to read . . . ." The court then informed Tyerman that if he wanted more time to read the PSR, then the court would recess for him to read the report. But Tyerman chose to rely on what he had already read and his counsel's advice. Tyerman commented that he had "sufficient knowledge of the way the report reads," but he did not "think the Court ha[d] sufficient knowledge to make a full decision or a complete decision on all things."

The court then quoted from the change-of-plea transcript regarding Tyerman's previous admission that the government has provided "'sufficient evidence that a jury would find [Tyerman] guilty of Count 3 of the indictment by a standard of beyond a reasonable doubt.'" The court also quoted its prior statement that it was "'*going to put off accepting [Tyerman's] plea* because [it] want[ed] the opportunity to review the presentence report.'" (Emphasis added.) Thereafter, the court stated:

> So the record should show that the Court has now read the report. The guideline promulgated by the sentencing commission entitled 6B1.2(c) provides as follows: "In the case of a plea agreement that includes a specific sentence Rule 11(c)(1)(c), the Court may accept the agreement if the Court is satisfied either that: (1) the agreed sentence is within the applicable guideline range; or (2)(A) the agreed sentence departs from the applicable guideline range for justifiable reasons; and (B) those reasons are specifically set forth in writing in the statement of reasons or judgment and the commitment order."

> *So the Court is going to accept Mr. Tyerman's plea* under 6B1.2, Paragraph (c)(2) because the Court believes that the agreed sentence departs from the applicable guideline range for justifiable reasons and (B) those reasons are specifically set forth in writing in the statement of reasons or the judgment and commitment order, which the Court will do because I do believe that the agreed-upon sentence is one that complies with 3553, in that it is a sentence that is sufficient, but not greater than necessary.

-6-

*So the Court now formally accepts the plea.*

(Emphasis added.)

Tyerman's counsel then spoke regarding Tyerman's desire to withdraw his plea. According to counsel, he and Tyerman had reviewed the PSR and projected Guidelines sentence "on several occasions prior to the time that [Tyerman] made the arrangements to enter into the plea agreement with the Government." Counsel expressed his belief that Tyerman understood the plea agreement and that Tyerman's "difference is with what he thinks the projected sentence will be under the 11(c)(1)([C]) agreement and whether or not his numbers that he arrives at matches up with what the presentence report will be." Counsel stated that "[p]art of the reason" that Tyerman entered a plea was because his extensive criminal history record "could have been grounds to put him at the high end of the [G]uidelines." Counsel then expressed his belief that Tyerman could withdraw his plea under Federal Rule of Criminal Procedure 11, stating:

> I believe Mr. Tyerman would be entitled to the withdrawal of his plea, whether I represent him later or not on the Rule 11, *the Court having not accepted that plea at the prior plea hearing on the Rule 11, which would allow his withdrawal prior to that time. And I think his withdrawal would trump the Court's acceptance.* And I would ask the Court, even though I've advised him against it, I would argue to the Court to accept his withdrawal.

(Emphasis added.) In response, the government stated:

> Well, we would resist the motion to withdraw his plea. I understand that Rule 11 does say that a Defendant may withdraw a plea of guilty or nolo contendere before the Court accepts the plea for any reason or no reason.

-7-

I mean, he did indicate prior to you coming out on the bench that he did want to withdraw his plea. However, it's at the 11th hour. It's the morning of sentencing. He pled guilty well over—well, I think it was almost a year ago. And the initial PSR had been outstanding for quite sometime. So he's had plenty of time to consider this and to think about it.

And while I understand that the rule says that, you know, he may have an argument that, "Well, if you would have let me make my motion before you accepted the plea, then I'd be able to withdraw it."

Now that you've accepted the plea, the fair and just reason analysis applies under the Eighth Circuit case law.

\* \* \*

*You know, the only concern I have, Judge, is what Rule 11 says. And on appeal if the Eighth Circuit would say, "Well, you know, you knew, Judge, before you went on the bench that he wanted to withdraw his plea, and you really didn't let him do that before you granted—or accepted the plea, which then changed the standard of how you look at it." So that's just a concern that I have.*

(Emphasis added.)

Tyerman then expressed his desire to withdraw his plea and his understanding that "because Rule 11([d])(1) provides that it can be withdrawn at any time up until the Court accepts it for any reason or for no reason at all, I've always been under the impression that there would be an appropriate day that it came about." In response, the court stated that "the only condition on your plea was whether I was going to accept it. There were no other conditions that I'm aware of. Were you under the impression that there were other conditions?" Because of Tyerman's misunderstanding of the question, the district court rephrased the question, stating, "Other than the condition that I accept or reject the presentence report before I decided to accept or reject your plea, do you know of any other conditions that your plea was based upon?" Tyerman

answered, in relevant part, that the district court "reserved acceptance for a reason." The court responded:

> The reason that we have the long plea colloquy and that it was reduced to writing was the only condition that was placed upon the acceptance of your plea, Mr. Tyerman, was whether or not I, as the sentencing Court, thought the sentence that was agreed upon by you and [the government] was one that was sufficient, but not greater than necessary. Okay. That was the only condition; right?
>
> Any other record you want to make on your attempted withdrawal of your plea?

Tyerman then stated:

> Yes. If the Court didn't accept the plea and the guidelines allow me to withdraw it for any reason or no reason at all up until the time the Court accepts it, as well as 11([d])(2)(b) which states if the Defendant can show a fair and just reason for requesting a withdrawal.

After the court verified with Tyerman's counsel that the PSR correctly calculated the sentence, the court accepted the plea agreement. After allocution, the court sentenced Tyerman to "a total term of 50 months on Count 3 of the superseding indictment, which will be served consecutive to the sentence in Story County, Iowa, Docket No. FEC R040696."

## II. *Discussion*

Tyerman asserts that he had the absolute right to withdraw his guilty plea under Federal Rule of Criminal Procedure 11(d)(1) in light of the district court's deferral of acceptance of his guilty plea at the change-of-plea hearing. Tyerman maintains that this rule leaves the district court with no discretion to deny a pre-acceptance withdrawal of a guilty plea. According to Tyerman, he alerted the district court prior

to sentencing that he wanted to withdraw his plea because the court had not yet accepted the plea. Tyerman contends that the record reflects that the district court did not explicitly, implicitly, or conditionally accept his guilty plea or the plea agreement during the change-of-plea hearing. Tyerman asserts that even though the district court detailed the consequences of pleading guilty and found that Tyerman entered the plea voluntarily, the court expressly declined to accept the plea during the change-of-plea hearing. Tyerman points out that the district court did not accept the guilty plea until the sentencing hearing, which was after both the court and the government became aware that he wanted to withdraw his plea.

In response, the government argues that Tyerman's argument fails because the change-of-plea and sentencing transcripts, considered as a whole, demonstrate that the district court implicitly accepted Tyerman's guilty plea during the change-of-plea hearing but deferred acceptance of the Rule 11(c)(1)(C) plea agreement pending review of the PSR. According to the government, pursuant to *United States v. Hyde*, 520 U.S. 670 (1997), a district court may accept a guilty plea while deferring acceptance of the plea agreement. The government maintains that the district court engaged in a complete and thorough Rule 11 colloquy with Tyerman and contends that a fair reading of the colloquy, particularly when comparing the district court's interchangeable use of the terms "plea" and "plea agreement" at both the change-of-plea and sentencing hearings, reveals that the district court intended to accept Tyerman's plea but reserve acceptance of the Rule 11(c)(1)(C) plea agreement.

Federal Rule of Criminal Procedure 11(d)(1) provides that "[a] defendant may withdraw a plea of guilty . . . before the court accepts the plea, for any reason or no reason. " *See also United States v. Head*, 340 F.3d 628, 630 (8th Cir. 2003) ("Under Rule 11(d), a criminal defendant is allowed to withdraw a guilty plea for any reason (or no reason at all) until the time the trial court accepts the plea.").

The present case is substantially similar to *Head*, in which we held that, pursuant to Rule 11(d), the defendant "had a right to withdraw his guilty plea when he moved to do so . . . because his plea had not yet been accepted." *Id*. In that case, we only "look[ed] to the transcript of [the defendant's] change of plea hearing"—the proceeding that occurred prior to the date of the motion to withdraw—"to determine whether [the defendant's] guilty plea was accepted before he moved to withdraw it." *Id*. After throughly scrutinizing the transcript, we were unable to "say that the district court accepted [the defendant's] guilty plea at that time," explaining:

> *First, the court does not explicitly do so through the use of words such as "I accept your plea of guilty."* *Nor do we believe that the district court implicitly accepted the plea.* Although the district court does detail the consequences of a guilty plea—giving up rights to further trial proceedings—it also makes clear that the plea is not yet accepted. The district court states:
>
>> [I]f [the plea agreement] is vacated or rejected at the time of sentencing—as I go over this and think about it in the weeks ahead and decide that the agreement is not appropriate, that ten years isn't enough or whatever, *then you would go back to trial on all of the original charges*.
>
> (Change of Plea Tr. at 41 (emphasis added).) The district court then advised [the defendant] that pursuant to the plea agreement, the government "reserve[d] the right to withdraw from this plea agreement if you commit any new offense *before I accept the guilty plea*." (*Id*. (emphasis added).)
>
> * * *
>
> *The issue before us is simply whether the district court accepted [the defendant's] guilty plea at all*. Guided by the language used by the district court indicating that the plea was not yet accepted, and in the absence of any explicit statement to the contrary, the record reflects that the plea, as opposed to only the plea bargain, was not accepted at the change of plea hearing. It follows that [the defendant's] guilty plea

-11-

remained unaccepted by the district court when he moved to withdraw it on September 4, 2002, and under Rule 11(d) [the defendant] retained an absolute right to withdraw his plea. The district court's failure to allow him to do so was error.

*Id*. at 630–31 (emphasis added in part).

After thoroughly reviewing the change-of-plea hearing transcript, *see id*. at 630, "we cannot say that the district court accepted [Tyerman's] guilty plea at that time." *Id*. First, as in *Head*, the district court never explicitly accepted the guilty plea "through the use of words such as 'I accept your plea of guilty.'" *Id*.

Second, like in *Head*, we do not "believe that the district court implicitly accepted the plea." *Id*. "Although the district court does detail the consequences of a guilty plea—giving up rights to further trial proceedings—it also makes clear that the plea is not yet accepted." *Id*. at 630–31. On two occasions, the district court explicitly indicated that it *was not* accepting the guilty plea at the change-of-plea hearing, as it stated that it was "going to put off accepting [Tyerman's] plea" pending its review of the PSR. Furthermore, when the government asked whether the court was "going to make the findings as to the voluntariness," the court replied, "Yeah. *I generally don't make those until I accept the plea*, but I think I will today because of where we're at." (Emphasis added.)

"Guided by the language used by the district court indicating that the plea was not yet accepted, and in the absence of any explicit statement to the contrary," the record demonstrates that the district court never accepted Tyerman's guilty plea at the change-of-plea hearing. *Id*. at 631. "It follows that [Tyerman's] guilty plea remained unaccepted by the district court when he moved to withdraw it [at the sentencing hearing], and under Rule 11(d) [Tyerman] retained an absolute right to withdraw his plea. The district court's failure to allow him to do so was error." *Id*.

-12-

Although we need not look beyond the change-of-plea hearing transcript to reach our decision, *id*. at 630, the sentencing transcript buttresses our conclusion. First, only after it learned that Tyerman wanted to withdraw his plea did the district court indicate that it was "going to accept Tyerman's plea." As explained *supra*, the district court erred by failing to permit Tyerman to withdraw his plea at the beginning of the sentencing hearing.

And, contrary to the government's argument on appeal, the government's counsel acknowledged at the sentencing hearing that the district court had not accepted Tyerman's plea prior to the sentencing hearing, stating:

> You know, the only concern I have, Judge, is what Rule 11 says. And on appeal if the Eighth Circuit would say, "Well, you know, you knew, Judge, before you went on the bench that he wanted to withdraw his plea, and *you really didn't let him do that before you granted—or accepted the plea*, which then changed the standard of how you look at it." So that's just a concern that I have.

(Emphasis added.)

The government's reliance on several of our sister circuits' cases in support of its argument that the district court implicitly accepted Tyerman's guilty plea is misplaced. *See, e.g.*, *United States v. Robinson*, 587 F.3d 1122, 1126 (D.C. Cir. 2009) (holding that district court accepted defendants' guilty pleas even though it refrained from accepting or rejecting defendants' plea agreements at plea hearing and used terms "plea" and "plea agreement" interchangeably because court specifically asked each defendant how he pleaded and then acknowledged its acceptance of each guilty plea); *United States v. Byrum*, 567 F.3d 1255, 1263–64 (10th Cir. 2009) (holding that district court's provisional acceptance of the defendant's guilty plea subject to review of PSR amounted to an acceptance of the guilty plea under Rule 11); *United States v. Battle*, 499 F.3d 315, 318, 321 (4th Cir. 2007) (holding that defendant's guilty plea was

accepted where district court stated the defendant's "plea of guilty is provisionally accepted"); *United States v. Jones*, 472 F.3d 905, 909 (D.C. Cir. 2007) (holding that defendant's guilty plea was accepted where district court "announced that 'the plea of guilty is conditionally *accepted* subject to review of the plea agreement and the presentence report, and I *find you guilty*'").

First, the district court did not state that it was "conditionally" or "provisionally" accepting the guilty plea and merely deferring acceptance of "the terms of the underlying plea agreements." *Byrum*, 567 F.3d at 1261 (citing *Battle*, 567 F.3d at 321–22; *Jones*, 472 F.3d at 909). Instead, the district court specifically stated that it was "going to put off accepting" Tyerman's plea, which is a deferral of acceptance of "the guilty plea itself." *Id.* (citing *United States v. Shaker*, 279 F.3d 494, 497 (7th Cir. 2002) (holding that district court abused its discretion in denying defendant's motion to withdraw guilty plea because defendant was entitled to withdraw plea freely and without inquiry where district court had not yet accepted plea but had deferred decision on acceptance or rejection until after its review of the PSR); *Head*, 340 F.3d at 631). "Rule 11 . . . contemplates an acceptance of a guilty plea *conditioned* on the ultimate acceptance or rejection of the plea agreement." *Id.* (citing Fed. R. Crim. P. 11(c)(3)–(5)). By contrast, "Rule 11 does not necessarily envision a deferral of a decision on the plea itself." *Id.* "[W]hat matters ultimately is the language of the trial court and the context in which it is used." *Id.* Here, as in *Shaker*, the district court's language indicated that it was "putting off" or "deferring" acceptance of the guilty plea pending its review of the PSR.

Second, *Robinson* does not support the government's argument that a fair reading of the colloquy between the district court and Tyerman indicates that the district court accepted Tyerman's guilty plea but merely reserved acceptance of the plea agreement, as evidenced by its interchangeable use of the terms "plea" and "plea agreement" at the change-of-plea hearing and sentencing. In *Robinson*, the district court held a Rule 11 plea colloquy with each defendant individually, while the other

two codefendants remained in the room. 587 F.3d at 1125. Each defendant pleaded guilty. *Id.* On appeal, the defendants argued that, by deferring acceptance of the plea agreements, "the court failed to clearly distinguish between their plea agreements and their guilty pleas, which left them with the belief that it had accepted neither." *Id.* at 1126. The D.C. Circuit rejected the defendants' argument, explaining:

> While the district court at times used the terms "plea" and "plea agreement" interchangeably, *e.g.*, Plea Tr. at 18, 24–25, 29, 35, 42, the transcript of the plea hearing, read in its entirety, establishes that the court accepted the appellants' guilty pleas. The court asked each appellant how he pleaded as to the two separate counts. Plea Tr. at 25, 37–38, 46. After each appellant twice responded, "Guilty," the court told him that it "accept[ed]" his plea. *Id.* at 25, 38, 46. Despite the court's occasional imprecision, therefore, it plainly accepted the appellants' guilty pleas and left them "no reasonable basis" for thinking otherwise. *Jones*, 472 F.3d at 909.

*Id.*

In *Robinson*—unlike in the present case—the district court clearly indicated that it was accepting *something*, which the D.C. Circuit determined to be the plea, as evidenced by the district court's statement that it "accepted" the defendants' pleas. By contrast, even if the district court in the present case used the words "plea" and "plea agreement" interchangeably, it *never* stated that it was accepting *anything*. As previously emphasized, it said the opposite—that it was "going to put off accepting [Tyerman's] plea." As a result, the district court erred in not allowing Tyerman to withdraw his plea.

## III. *Conclusion*

For the foregoing reasons, we reverse the judgment of the district court and remand for further proceedings consistent with this opinion.

_____