# United States Court of Appeals

## For the Eighth Circuit

_____

No. 14-2236

_____

United States of America

*Plaintiff - Appellee*

v.

Sheikh Bilaal Muhammad Arafat

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Minnesota - St. Paul

_____

Submitted: March 13, 2015
Filed: June 15, 2015

_____

Before WOLLMAN and COLLOTON, Circuit Judges, and WHITE,[1] District Judge.

_____

WOLLMAN, Circuit Judge.

Sheikh Bilaal Muhammad Arafat pleaded guilty to one count of armed bank robbery without the benefit of a plea agreement. In a separate proceeding, he pleaded

_____

[1]The Honorable Ronnie L. White, United States District Judge for the Eastern District of Missouri, sitting by designation.

guilty to five additional counts of armed bank robbery pursuant to a plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(C). Arafat later moved to withdraw his guilty pleas, but the district court[2] denied the motion and sentenced Arafat to 168 months of imprisonment, as contemplated in the plea agreement. On appeal, Arafat argues that the district court erred by refusing to allow him to withdraw his guilty pleas. We affirm.

Between January 2011 and January 2012, a serial bank robber dubbed "The Man in Black" committed thirty-one armed bank robberies across Minnesota. Arafat was arrested on January 3, 2012, after the armed robbery of the Rolling Hills Bank and Trust in Brewster, Minnesota. In a post-arrest interview with law-enforcement officers, Arafat admitted to committing that robbery. A month later, a federal grand jury returned an indictment charging Arafat with thirteen counts of armed bank robbery in violation of 18 U.S.C. § 2113(a) and (d), including the armed robbery of the Rolling Hills Bank and Trust.

While pre-trial proceedings were progressing, Arafat expressed dissatisfaction with his appointed counsel and requested permission to represent himself. A magistrate judge[3] held a hearing and, after the requisite inquiry and advisement, granted Arafat's motion to proceed pro se with appointed stand-by counsel. See Faretta v. California, 422 U.S. 806, 835 (1975) (requiring court to satisfy itself that defendant knows and understands the dangers and disadvantages of self-representation and that his waiver of right to counsel is knowing, voluntary, and intelligent). Arafat successfully moved to sever the counts charged in the indictment into three groups—Count 1, Counts 2 through 8, and Counts 9 through 13—to be

_____

[2]The Honorable Susan Richard Nelson, United States District Judge for the District of Minnesota.

[3]The Honorable Jeanne J. Graham, United States Magistrate Judge for the District of Minnesota.

tried in three separate proceedings. The district court ordered that the first trial on Count 1 of the indictment would begin on April 22, 2013.

On the day that the trial was scheduled to begin, Arafat notified the district court that he wished to plead guilty to Count 1 even though he had not entered into a plea agreement with the government. Because Arafat had asserted in earlier filings with the district court that he felt coerced to plead guilty, the court engaged in a lengthy discussion with Arafat to ensure that his guilty plea to Count 1 was not coerced but was, in fact, knowing and voluntary. After some vacillation based, in part, on his belief that the toy gun used in the robberies was not a "dangerous weapon" under § 2113(d), Arafat ultimately agreed that he "could be found guilty of [§] 2113(d)" and stated that he was "proceeding to voluntarily and fully, without any other outside forces or coercion, plead guilty as charged." Once Arafat formally entered his plea of guilty, the district court made the findings required by Rule 11[4] and accepted Arafat's guilty plea, stating, "Therefore, sir, I accept your plea of guilty to Count 1 and find you guilty as charged." The district court then scheduled two separate trials for the remaining counts of the indictment.

Before the start of the next scheduled trial, Arafat and the government reached a plea agreement to resolve the remaining twelve counts of the indictment, as well as eighteen additional uncharged armed bank robberies. Arafat agreed to plead guilty to five counts of armed bank robbery and to admit responsibility for twenty-five additional charged and uncharged armed bank robberies. In return, the government agreed that the remaining seven counts of the indictment would be dismissed and that,

---

[4]In accordance with Rule 11, the district court stated, "I find that the Defendant . . . is clearly mentally competent and capable of entering an informed plea. I find that he is aware of the nature of the charges against him, the nature of these proceedings, and the consequences of his plea of guilty. I find that his plea of guilty is free, voluntary, knowing, and informed. And I find that his plea is supported by independent facts in the record establishing all of the elements of the offense."

pursuant to Rule 11(c)(1)(C), a 168-month sentence was appropriate. On May 6, 2013, Arafat appeared before the district court for a change-of-plea hearing, at which the following exchange occurred:

> THE COURT: Because once you enter this plea today, you cannot withdraw it. Do you understand that?
> THE DEFENDANT: I understand I can withdraw it in the event you do not accept it.
> THE COURT: That's true. Let me say it a different way. Once the Court accepts your plea of guilty, you cannot withdraw it. Do you understand that?
> THE DEFENDANT: I do understand that.

The district court then conducted the remainder of the Rule 11 colloquy—ensuring that Arafat was competent to knowingly and voluntarily enter a guilty plea, that he understood the rights he was waiving by entering a guilty plea, that he understood the potential penalties he faced by entering a guilty plea, and that he had read and understood the terms of the plea agreement. During the course of this colloquy, the district court reiterated, "[O]nce I accept[] the plea, you [will] not be able to withdraw the plea," and Arafat again confirmed that he understood. Arafat then provided a factual basis for his guilty plea, admitting to each element of armed bank robbery as defined in § 2113(d) for each of the armed bank robberies set forth in the plea agreement. In response to an inquiry into whether he had been "forced, threatened, [or] coerced into entering [the] plea agreement," Arafat responded, "I have not."

The district court then discussed with Arafat specific terms of the plea agreement, confirming that he understood the nature of the agreement:

> THE COURT: . . . . First of all, the 168-month sentencing recommendation is not binding upon me unless I accept the plea agreement. Do you understand that?

THE DEFENDANT: I do.
THE COURT: And that I'm going to defer a decision on that until I've seen the presentence report. Do you understand that?
THE DEFENDANT: Yes.
THE COURT: If I do decide to accept the plea agreement, I will then impose a 168-month sentence on you. Do you understand that?
THE DEFENDANT: I do.
THE COURT: If I reject the plea agreement, we will proceed to trial on the remaining counts of the Indictment. Do you understand that?
THE DEFENDANT: Yes.
THE COURT: . . . . [I]f I accept your plea agreement, you will not be able to withdraw that plea agreement . . . . Do you understand that?
THE DEFENDANT: I do understand that.

In response to the government's questions, Arafat again provided a factual basis for the counts set forth in the plea agreement to which he was pleading guilty, as well as a factual basis for the counts the government had agreed to dismiss and "other criminal conduct" described in the plea agreement, *i.e.*, the armed bank robberies that had not been charged in the indictment. Arafat formally entered his plea of guilty to the five counts set forth in the plea agreement:

THE COURT: Mr. [Arafat], then, how do you plead to [the five relevant counts] of the Indictment? Do you plead guilty or not guilty?
THE DEFENDANT: Guilty.

The district court then made the requisite Rule 11(b) findings and advised the parties that it was deferring acceptance of the plea agreement until it had reviewed Arafat's presentence report:

THE COURT: I find that the Defendant . . . is clearly mentally competent and capable of entering an informed plea. I find that he is aware of the nature of the charges against him, the nature of these proceedings, and the consequences of his plea of guilty. I find that his plea of guilty is free, voluntary, knowing, and informed, and that the

plea is supported by independent facts in the record establishing all the elements of the offense.

As I said, I will defer a decision on whether to accept the plea agreement until I've reviewed the presentence report. At the conclusion of this hearing, I will order that report to be done. You will be interviewed as part of that report. You are welcome to ask [stand-by counsel] to be present for your interview. After the report is prepared, you will be provided a copy of it and given the opportunity to object to it as you see fit, and the Government will have the same opportunity.

The Court will receive the report and the objections, and at that time I will sit down and study the matter and determine whether to accept the plea agreement. We will schedule a sentencing hearing, at which time you'll have a full opportunity to be heard and at which time I will determine whether to sentence you pursuant to the plea agreement.

In contrast to the change-of-plea hearing on April 22, 2013, the district court did not explicitly state, "I accept your plea of guilty."

Following the preparation of a presentence report, Arafat appeared before the district court for sentencing on November 18, 2013. Moments before the hearing was to begin, Arafat submitted a motion to withdraw both of his guilty pleas. Arafat argued that he had an absolute right under Rule 11(d)(1) to withdraw the guilty plea he entered on May 6, 2013, because the district court had never accepted that guilty plea or, alternatively, that he had fair and just reasons under Rule 11(d)(2)(B) to withdraw that plea. See Fed. R. Crim. P. 11(d)(1) (allowing a defendant to withdraw a guilty plea "before the court accepts the plea, for any reason or no reason"); Fed. R. Crim. P. 11(d)(2)(B) (stating that after a court accepts a guilty plea but before it imposes sentence, a defendant may withdraw his plea if he "can show a fair and just reason for requesting the withdrawal"). As for the guilty plea entered and explicitly accepted on April 22, 2013, Arafat asserted the same fair and just reasons for requesting withdrawal, which included (1) that he was legally innocent of the

§ 2113(d) charge, (2) that he was denied meaningful access to the legal resources necessary to defend himself, (3) that the district court failed to explain that he was waiving his right to appeal, (4) that there was an insufficient factual basis to support his guilty pleas, and (5) that he was coerced into pleading guilty.

In a thorough and well-reasoned opinion, the district court denied Arafat's motion to withdraw his guilty pleas. The court first determined that the May 6 guilty plea had been implicitly accepted. The court then concluded that because it had explicitly accepted Arafat's guilty plea on April 22 and had implicitly accepted his guilty plea on May 6, Arafat was required under Rule 11(d)(2)(B) to show a fair and just reason to withdraw each of those pleas. The court found that the record as a whole and Arafat's own statements at the change-of-plea hearings refuted his purported fair and just reasons for withdrawing his guilty pleas. After denying the motion to withdraw, the court accepted the Rule 11(c)(1)(C) plea agreement and sentenced Arafat to concurrent 168-month terms of imprisonment on each of the six counts of conviction. Arafat now appeals, arguing that his guilty plea was not implicitly accepted at the May 6 change-of-plea hearing and that he offered a fair and just reason to withdraw both of his guilty pleas, namely, that there was no legal or factual basis on which to find him guilty of armed bank robbery under 18 U.S.C. § 2113(d).

Arafat first argues that he had an absolute right to withdraw his May 6 guilty plea because the district court neither explicitly nor implicitly accepted that plea. We typically review the denial of a motion to withdraw a guilty plea for abuse of discretion. See United States v. Gamble, 327 F.3d 662, 663 (8th Cir. 2003). But if a district court has not accepted a guilty plea, the court has "no discretion, under Rule 11(d), to deny" a motion to withdraw. United States v. Head, 340 F.3d 628, 629 (8th Cir. 2003). This is so because under Rule 11(d)(1), a criminal defendant may withdraw his guilty plea for any reason or for no reason at all until the district court accepts the plea. Because Arafat contends that the court did not accept his May 6

guilty plea, we will "independently scrutinize[] the record" to determine whether the district court accepted Arafat's plea before Arafat moved to withdraw it. Head, 340 F.3d at 630.

A guilty plea may be explicitly or implicitly accepted by a district court. See Head, 340 F.3d at 630-31. Rule 11 does not dictate any specific language that must be used by a court to accept a guilty plea. See, e.g., United States v. Byrum, 567 F.3d 1255, 1261 (10th Cir. 2009) ("Rule 11 does not prescribe any specific language of acceptance, and imposing a requirement on the district court to utter some talismanic words to effect an acceptance is not supported by the Federal Rules of Criminal Procedure or the case law."); United States v. Battle, 499 F.3d 315, 321-22 (4th Cir. 2007) ("Given the Rules' silence, we see no reason to require district courts to use some kind of talismanic 'magic words' to effect an acceptance . . . ."). "[W]hat matters ultimately is the language of the trial court and the context in which it is used." United States v. Tyerman, 641 F.3d 936, 943 (8th Cir. 2011) (quoting Byrum, 567 F.3d at 1261). Given the absence of an explicit acceptance of Arafat's guilty plea during the May 6 change-of-plea hearing, the question is whether the district court implicitly accepted Arafat's guilty plea.

Our review of the record satisfies us that the district court implicitly accepted Arafat's guilty plea at the May 6 hearing. The court properly cautioned Arafat that once the court accepted his guilty plea, he would not be permitted to withdraw the plea. After detailing the litany of consequences resulting from a plea of guilty, outlining the pertinent provisions of the plea agreement, and obtaining a detailed factual basis from Arafat for his guilty plea, the court specifically inquired whether Arafat was "plead[ing] guilty or not guilty." Arafat replied, "Guilty." The district court then found that the "plea of guilty [was] free, voluntary, knowing, and informed, and that the plea [was] supported by independent facts in the record establishing all the elements of the offense." Notably, at no time did the district court explicitly state that it would defer acceptance of the guilty plea. Rather, it deferred

only acceptance of the plea *agreement*. Taken as a whole and considered in context, the district court's statements reflect that it intended to accept, and that it did implicitly accept, Arafat's guilty plea to the relevant counts of the indictment and that the court intended to defer only its decision whether to accept the plea agreement.

Arafat points to our decisions in Head and Tyerman in support of his position that the district court did not implicitly accept his guilty plea at the May 6 change-of-plea hearing. In Head, as in this case, the district court did not explicitly accept the defendant's guilty plea. But in Head, unlike in this case, we concluded that the district court did not implicitly accept the plea because, although the court "detail[ed] the consequences of a guilty plea[,] . . . it also ma[de] clear that the plea [was] not yet accepted." 340 F.3d at 630-31. We found significant the court's statement during the change-of-plea hearing that the defendant "*would go back to trial on all of the original charges*" if the plea agreement were rejected. Id. at 631. We also found relevant the district court's statement that the government had reserved the right to withdraw from the plea agreement if the defendant were to "commit any new offense *before [the court] accept[ed] the guilty plea*." Id. Had the court intended to accept Head's guilty plea at the change-of-plea hearing, there would have been little practical effect in warning him about the potential consequences of committing a new offense before the plea was accepted because Head would have had no opportunity to commit such an offense. These two statements in conjunction led us to conclude that, given "the language used by the district court indicating that the plea was not yet accepted, and in the absence of any explicit statement to the contrary," the court had not accepted the guilty plea. Id.

In Tyerman, we also concluded that the district court had not implicitly accepted the defendant's guilty plea and thus that the court erred in denying the defendant's motion to withdraw. 641 F.3d at 942, 944. As in Head, the district court did not explicitly accept the guilty plea. But unlike in Head, at the change-of-plea hearing in Tyerman, the district court twice explicitly declined to accept the guilty

-9-

plea, stating instead that it was "*going to put off accepting [the] plea*" because it wanted the opportunity to review the defendant's presence report before accepting the guilty plea. Id. at 938. In response to a query from the government, the court stated that it would make "voluntariness" findings despite the fact that it typically did not make those findings "*until [it] accept[ed] the plea.*" Id. The district court also confirmed that the defendant understood that if the court did not accept the Rule 11(c)(1)(C) plea agreement, the defendant "would be allowed the opportunity to withdraw [his] plea, go to trial, and [his] not guilty plea would be reinstated." Id. at 937. Not until the sentencing hearing many months later—after the defendant had moved to withdraw his plea and that motion had been denied—did the court state that it was "*going to accept*" the plea and then, in fact, "*formally accept[ed] the plea.*" Id. at 939.

In both Head and Tyerman, we identified language used by the respective district courts "indicating that the plea was not yet accepted," as well as the absence of any explicit language indicating that the plea had been accepted. Head, 340 F.3d at 631; see also Tyerman, 641 F.3d at 942. In each case, we concluded that the guilty plea had not been implicitly accepted—despite the district court's completion of the requisite Rule 11 colloquy—because of express language indicating that the plea had *not* been accepted.

Arafat points to the district court's statement explaining that if the court rejected Arafat's Rule 11(c)(1)(C) plea agreement after its consideration of the presence report, Arafat would "proceed to trial on the remaining counts" as an indication that the court was not accepting his plea. Arafat contends that this statement makes his case indistinguishable from Head. We disagree. When a defendant's guilty plea is made pursuant to a Rule 11(c)(1)(C) plea agreement, the district court must give the defendant an opportunity to withdraw his guilty plea if the court ultimately rejects the plea agreement, and here the district court informed Arafat of that right. See Fed. R. Crim. P. 11(c)(5). Rule 11 also contemplates that a district

court may accept a defendant's plea of guilty but, as in this case, defer acceptance of the Rule 11(c)(1)(C) plea agreement until after the court has had an opportunity to consider the defendant's presentence report. See United States v. Hyde, 520 U.S. 670, 674 (1997) ("Guilty pleas can be accepted while plea agreements are deferred . . . ."); see also U.S.S.G. § 6B1.1(c) (indicating that the court may "accept the [Rule 11(c)(1)(C)] agreement, reject it, or defer a decision until the court has reviewed the presentence report"). Throughout the change-of-plea hearing, the district court carefully distinguished between Arafat's guilty plea and his plea agreement, specifically electing to defer only the latter. Taken in context, the statement identified by Arafat was simply an accurate explanation by the court of the consequences under Rule 11(c)(5) if it rejected Arafat's Rule 11(c)(1)(C) plea agreement. See Fed. R. Crim. P. 11(c)(5) (noting that if a court rejects a Rule 11(c)(1)(C) plea agreement, it must "inform the parties"; "give the defendant an opportunity to withdraw the plea"; and "advise the defendant personally that if the plea is not withdrawn," the outcome of the proceedings may be less favorable than contemplated in the plea agreement); Fed. R. Crim. P. 11(b)(2) (instructing that before accepting a guilty plea, the district court must ensure that "the plea is voluntary and did not result from force, threats, or promises (other than promises in a plea agreement)"). The district court's statement did not evince an intent to defer acceptance of the guilty plea. Indeed, this statement was similar to one made by the district court in Tyerman—a statement that this court did not identify as an indication of the court's intent to defer acceptance of the guilty plea. See Tyerman, 641 F.3d at 937.

As the foregoing recitation of the record reveals, the district court conducted a thorough, painstakingly detailed colloquy with Arafat, informing Arafat of the consequences of his guilty plea, confirming with Arafat the factual basis for his guilty plea to each of the relevant charges, and obtaining from Arafat a knowing and voluntary admission of guilt to each charge. We agree with the district court that after this colloquy, Arafat "had no reason to believe he could unconditionally

-11-

withdraw his plea." See Battle, 499 F.3d at 321 ("During the colloquy, the defendant admits, in open court, that he is guilty and describes the circumstances of his guilt. It makes little sense to permit an unconditional withdrawal of a guilty plea after the colloquy has been conducted, especially when the district court has informed the defendant of the consequences of pleading guilty and the defendant had no reason to believe he could withdraw the plea at a later date for any reason.").

In sum, we hold that because Arafat's May 6, 2013, guilty plea was implicitly accepted, the district court did not err in denying Arafat's motion to withdraw that plea under Rule 11(d)(1).

Arafat next argues that he offered a fair and just reason to withdraw his guilty pleas, namely, that there was no legal or factual basis to find him guilty of armed bank robbery in violation of 18 U.S.C. § 2113(d). In other words, according to Arafat, there was insufficient evidence at the time of his guilty pleas to conclude that he "likely committed the offense" of armed bank robbery in violation of § 2113(d). See United States v. Cheney, 571 F.3d 764, 769 (8th Cir. 2009) (describing when a guilty plea is supported by a sufficient factual basis). A person violates § 2113(d) if, while committing bank robbery, he "assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device." 18 U.S.C. § 2113(d). "[F]acts gathered from the prosecutor's summarization of the plea agreement and the language of the plea agreement itself, a colloquy between the defendant and the district court, and the stipulated facts before the district court are sufficient to find a factual basis for a guilty plea." United States v. Brown, 331 F.3d 591, 595 (8th Cir. 2003) (citations omitted).

Arafat argues that because he admitted only to using a toy gun during each of the bank robberies in question, there was no legal or factual basis for his guilty plea to the elements of § 2113(d). We disagree. The Supreme Court has held that an unloaded gun is a "dangerous weapon" for purposes of § 2113(d) because "the

-12-

display of a gun instills fear in the average citizen" and, "as a consequence, it creates an immediate danger that a violent response will ensue." McLaughlin v. United States, 476 U.S. 16, 17-18 (1986). Similarly, in United States v. DeAngelo, 13 F.3d 1228, 1234 (8th Cir. 1994), we considered whether a starter pistol could qualify as a dangerous weapon under § 2113(d). We concluded that it could because the display of a starter pistol, like the display of an unloaded gun,"instills fear in the average citizen." Id. (noting that after McLaughlin, "a number of courts . . . have found that a toy gun or imitation gun can be considered a 'dangerous weapon'" under § 2113(d) and citing cases). Arafat admitted that he robbed multiple banks while displaying a toy gun that he had altered to more closely resemble an actual gun, that he intended for his victims to believe that the toy gun was an actual gun, and that his victims believed that the toy gun was an actual gun. At the April 22 change-of-plea hearing, Arafat unequivocally acknowledged that he could be found guilty of armed bank robbery—even if the weapon used was a toy gun—by stating, "I clearly recognize I could be found guilty of [§] 2113(d)." Arafat also stated, "I did walk into the bank, I did use a toy gun that was perceived to be a real gun, and that perception caused another individual to fear for their life. . . . I accept responsibility. I did rob the bank." And at the May 6 change-of-plea hearing, Arafat admitted the factual basis and his responsibility for thirty-one armed bank robberies, each of which was committed using the same toy gun. Accordingly, the district court did not abuse its discretion in rejecting this purported fair and just reason and in denying Arafat's motion to withdraw his guilty pleas.

The judgment is affirmed.

_____